603 So.2d 1141 (1992)
Larry Eugene MANN, Appellant,
v.
STATE of Florida, Appellee.
No. 75952.
Supreme Court of Florida.
April 2, 1992.
Rehearing Denied August 27, 1992.
James Marion Moorman, Public Defender and Robert F. Moeller, Asst. Public Defender, *1142 Tenth Judicial Circuit, Bartow, for appellant.
Robert A. Butterworth, Atty. Gen. and Robert J. Krauss, Asst. Atty. Gen., Tampa, for appellee.
PER CURIAM.
Larry Mann appeals his death sentence imposed on resentencing. We have jurisdiction pursuant to article V, section 3(b)(1), Florida Constitution, and affirm.
A jury convicted Mann of kidnapping and first-degree murder in the death of a ten-year-old girl, and the trial court sentenced him to death. This Court affirmed the conviction, but remanded for resentencing. Mann v. State, 420 So.2d 578 (Fla. 1982).[1] On remand the trial court again sentenced Mann to death, and this Court affirmed. Mann v. State, 453 So.2d 784 (Fla. 1984), cert. denied, 469 U.S. 1181, 105 S.Ct. 940, 83 L.Ed.2d 953 (1985). After the signing of his death warrant in 1986, Mann filed a motion for postconviction relief with the trial court and a petition for writ of habeas corpus with this Court. This Court affirmed the trial court's denial of relief and denied the habeas petition. Mann v. State, 482 So.2d 1360 (Fla. 1986). Mann received a stay of execution in the federal system, however, and the circuit court of appeal eventually decided that his jury had been misinformed as to its role in sentencing and directed that he be resentenced. Mann v. Dugger, 844 F.2d 1446 (11th Cir.1988), cert. denied, 489 U.S. 1071, 109 S.Ct. 1353, 103 L.Ed.2d 821 (1989).
Numerous witnesses testified at the new penalty phase. Among other people, the lead detective of the investigation and several technicians testified as to the circumstances of the crime. The medical examiner described the victim's injuries and told the jury that she died from a skull fracture after being cut and beaten. Mann had been convicted of burglary in Mississippi, and his victim testified to the circumstances of that crime to prove that it was a crime of violence. Several family members and other people testified in Mann's behalf, describing his life, how they thought he had grown as a person since being imprisoned, and his expressions of remorse for committing this murder. A psychologist opined that Mann is an alcoholic and a pedophile but had no brain damage. She also thought that the statutory mental mitigators[2] should be applied to Mann. On cross-examination she stated that Mann abducted the victim because he wanted to molest her. In rebuttal the prosecution presented a psychologist, who testified that Mann is a pedophile and substance abuser, that he is antisocial, and that the mental mitigators did not apply in this case. Two other witnesses testified that they received no indication that Mann was drunk the morning he committed this crime.
After hearing all of the testimony, the jury recommended that Mann be sentenced to death. In his written findings the trial judge found that Mann had a prior violent felony conviction, that he committed this murder during the commission of a felony, and that this murder was especially heinous, atrocious, or cruel. The judge found that no statutory mitigators had been established, but that the following nonstatutory mitigators had been: Mann suffered from psychotic depression and feelings of rage against himself because of strong pedophilic urges; Mann had been an exemplary inmate; he had a long history of alcohol and drug dependency; he had demonstrated great remorse; he had developed his artistic talents; and he had maintained a relationship with his family and friends. Characterizing these mitigators as "unremarkable," however, the judge found that they did not outweigh the aggravators and that the death penalty was appropriate.
In response to a question on cross-examination the detective who investigated this case stated: "We went [to the hospital] *1143 to question Mr. Mann and, of course, there was no statement given." Mann argues that this answer was an impermissible comment on his right to remain silent and that it undermined the cornerstone of his mitigating evidence, i.e., his remorse. Considering the circumstances that prompted the comment, we do not think so, but, assuming the statement constituted a comment on silence, cf., Jackson v. State, 522 So.2d 802 (Fla.), cert. denied, 488 U.S. 871, 109 S.Ct. 183, 102 L.Ed.2d 153 (1988), it was harmless. Mann's wife testified that she was not sure of Mann's remorse until after his death warrant was signed in 1986. Two of his former attorneys testified to Mann's being remorseful, but they only met him after the death warrant had been signed. The trial judge verbally concluded that the warrant triggered Mann's remorse, but found and considered that remorse as a nonstatutory mitigator. Thus, there is no reasonable possibility that the detective's statement contributed to Mann's sentence, and it was harmless beyond reasonable doubt. State v. DiGuilio, 491 So.2d 1129 (Fla. 1986).
During closing argument, the prosecutor talked about the defense psychologist's testimony and stated: "She is arguing and suggesting to you on the witness stand because this man is a child molester and a pervert, that his actions are somehow more excusable than a person that is not a child molester and a pervert... . This is actually the best she can do." Mann now claims that this argument turned his being a pedophile into an improper nonstatutory aggravator and denigrated his psychologist's opinion that the statutory mental health mitigators applied to him. We disagree.
As we have stated before: "The proper exercise of closing argument is to review the evidence and to explicate those inferences which may reasonably be drawn from the evidence." Bertolotti v. State, 476 So.2d 130, 134 (Fla. 1985). It is clear from the record that the prosecutor made these statements to negate the psychologist's conclusion that the statutory mental mitigators applied to Mann. Merely arguing a conclusion that can be drawn from the evidence is permissible fair comment. After hearing the evidence and the instructions, it was the duty of the judge and jury to decide the weight to be given to the evidence and testimony, and there was no impropriety here.[3]Cf. Lucas v. State, 568 So.2d 18 (Fla. 1990); Williamson v. State, 511 So.2d 289 (Fla. 1987), cert. denied, 485 U.S. 929, 108 S.Ct. 1098, 99 L.Ed.2d 261 (1988); Craig v. State, 510 So.2d 857 (Fla. 1987), cert. denied, 484 U.S. 1020, 108 S.Ct. 732, 98 L.Ed.2d 680 (1988).
Mann argues that the instruction on previous conviction of a violent felony improperly relieved the prosecution of having to prove that aggravator beyond a reasonable doubt, but did not object to the instruction on this ground in the trial court. This argument, therefore, has not been preserved for appeal. Tillman v. State, 471 So.2d 32 (Fla. 1985). There is also no merit to this claim because the evidence showed the Mississippi burglary to have been a crime of violence. No improper shifting of the burden of proving an element of a crime occurred here,[4] nor did any error.
In instructing the jury on the felony-murder aggravator of murder being committed during a kidnapping, the judge stated:
In order to establish kidnapping, the State must prove the following three elements beyond a reasonable doubt.
(1) Larry Eugene Mann forcibly, secretly or by threat confined, abducted or imprisoned Elisa Nelson against her will.

*1144 (2) That Larry Eugene Mann had no lawful authority.
(3) Larry Eugene Mann acted with intent to inflict bodily harm upon or to terrorize the victim or facilitate the commission of a lewd and lascivious or indecent assault on a child under the age of 14.

Mann now argues that the underlined portion of paragraph (3) was improper because it conformed to neither the allegations nor the proof. This argument overlooks his psychologist's testimony that Mann kidnapped the girl because he wanted to molest her. In any event, any error in this instruction is harmless because Mann had been convicted of kidnapping the victim, and the judge and jury knew of that conviction.
After the jury made its recommendation, the trial judge received numerous letters urging him to resentence Mann to death as well as letters from Mann's family requesting mercy. At sentencing he put those letters in the record, gave the defense and the prosecution time to read them, and stated: "The Court will make it perfectly clear, then, at this point, that whatever conclusions the Court has reached in this matter, [were] reached independent of any correspondence that I have received from either position; either from [Mann's] family or from the victim's or friends of the victim's [family]." Mann now argues that the letters advocating the death sentence constituted improper victim-impact evidence and that the court's exparte consideration of the letters violated Gardner v. Florida, 430 U.S. 349, 97 S.Ct. 1197, 51 L.Ed.2d 393 (1977).[5] As previously stated, "judges are routinely exposed to inadmissible or irrelevant evidence but are disciplined by the demands of the office to block out information which is not relevant to the matter at hand." Grossman v. State, 525 So.2d 833, 846 n. 9 (Fla. 1988), cert. denied, 489 U.S. 1071, 109 S.Ct. 1354, 103 L.Ed.2d 822 (1989). The judge made it clear that he did not rely on these letters in sentencing Mann. Thus, there is no merit to this claim.
There is likewise no merit to Mann's argument that the judge's finding regarding remorse is not sufficiently clear. The judge clearly and unambiguously found and considered Mann's remorse in mitigation. Mann's real complaint is that the judge did not give greater weight to his remorse, but the weight to be given a mitigator is left to the trial judge's discretion. Campbell v. State, 571 So.2d 415 (Fla. 1990).
Mann was originally adjudged guilty of first-degree murder on January 14, 1983. The instant judge executed a second judgment on March 2, 1990, and Mann argues that, because his original conviction has never been disturbed, the second judgment is unnecessary. We agree that the judgment dated January 14, 1983 is still valid and that the second one is extraneous.
Because we find no reversible error, we affirm Mann's sentence of death.
It is so ordered.
SHAW, C.J., and OVERTON, McDONALD, BARKETT, GRIMES, KOGAN and HARDING, JJ., concur.
NOTES
[1] The facts are set out in this original opinion.
[2] The mental health mitigators are: "The capital felony was committed while the defendant was under the influence of extreme mental or emotional disturbance" and "[t]he capacity of the defendant to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was substantially impaired." § 921.141(6)(b), (f), Fla. Stat. (1989).
[3] Mann relies on Garron v. State, 528 So.2d 353 (Fla. 1988), where we found the prosecutor's attempts to discredit insanity as a legal defense to be reversible error. Garron, however, is factually distinguishable from the instant case because no such misbehavior occurred here.
[4] Hildwin v. Florida, 490 U.S. 638, 640, 109 S.Ct. 2055, 2056-57, 104 L.Ed.2d 728 (1989) (an aggravator "is not an element of the offense but instead is `a sentencing factor that comes into play only after the defendant has been found guilty.'") (quoting McMillan v. Pennsylvania, 477 U.S. 79, 86, 106 S.Ct. 2411, 2416, 91 L.Ed.2d 67 (1986)).
[5] Gardner v. Florida, 430 U.S. 349, 362, 97 S.Ct. 1197, 1207, 51 L.Ed.2d 393 (1977), held that due process is violated "when the death sentence was imposed, at least in part, on the basis of information which [the defendant] had no opportunity to deny or explain."