[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-11349-P
_____

LARRY EUGENE MANN,

Plaintiff - Appellant,

versus

JOHN PALMER,
in his official capacity as the Warden of Florida State Prison,
SECRETARY, FLORIDA DEPARTMENT OF CORRECTIONS,

Defendants - Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

Before DUBINA, Chief Judge, and PRYOR and MARTIN, Circuit Judges.

PRYOR, Circuit Judge:

Larry Eugene Mann kidnapped and murdered a ten-year-old girl in 1980,

and a Florida trial court convicted and sentenced him to death. After appellate and

collateral review, the Florida courts again sentenced Mann to death in 1983 and

1990. On March 1, 2013, the Governor signed a death warrant for Mann and

scheduled his execution for April 10, 2013, at 6:00 p.m.  Mann then filed in the district court a civil action to challenge the method of execution in Florida as cruel and unusual under the Eighth Amendment, 42 U.S.C. § 1983, even though Mann had filed a nearly identical complaint in 2010, which the district court had dismissed in 2011.  On April 1, 2013, the district court dismissed Mann's new complaint for failure to state a claim.  See Fed. R. Civ. P. 12(b)(6).  Mann now has moved this Court for a stay of execution and expedited consideration of his appeal of the dismissal of his complaint for failure to state a claim.  We **DENY** the motion to expedite Mann's appeal, and we **DENY** his motion for a stay of execution.

## I.  BACKGROUND

On December 10, 2010, Mann filed a complaint against Steven Singer, in his official capacity as the Warden of Florida State Prisons; Walter McNeil, in his official capacity as the Secretary of the Florida Department of Corrections; and Does 1-50, Executioners for the State of Florida.  The complaint raised several challenges, under the prohibition of cruel and unusual punishment in the Eighth Amendment, to the lethal injection protocol approved in 2007 by the State of Florida.  See 42 U.S.C. § 1983.  The complaint alleged that the use of sodium pentothal, also known as sodium thiopental, as the first drug in the three-drug protocol created a substantial risk of serious harm because the executioners lacked adequate training and experience to store, mix, prepare, and administer the drug;

2

and the State of Florida lacked a safe, current, or adequate supply of sodium pentothal. The complaint also alleged that the use of pancuronium bromide as the second drug in the three-drug protocol substantially increased the risk that Mann would be conscious during an execution and unable to convey the torturous pain and suffering he experienced and served no legitimate purpose in the execution procedure. And the complaint alleged that the use of potassium chloride as the final drug in the three-drug protocol causes torturous pain to an inmate if the inmate is not adequately anesthetized during its administration, and the protocol lacked adequate safeguards for its administration. The complaint also alleged that the protocol did not adequately define the person to carry out a central venous line placement if peripheral venue access is not possible; that the protocol did not adequately provide for a trained and qualified individual to determine whether the inmate is in the surgical plane of anesthesia before the second and third drugs are administered; that the State has consistently failed to employ competent, trained personnel to perform executions; that the protocol did not allow for an individualized assessment of Mann's specific medical conditions, including his diabetes and the scar tissue on his forearms, which could compromise venous access; and that the protocol included no safeguards in the event of a last minute stay of execution after the lethal injection process has begun.

On January 14, 2011, the district court sua sponte dismissed Mann's complaint as without merit after the decision of the Supreme Court in Baze v. Rees, 533 U.S. 35, 128 S. Ct. 1520 (2008).  Mann did not appeal the dismissal of his complaint.

Florida has since amended its protocol to substitute two new drugs for the drugs listed in the protocol approved in 2007.  On June 8, 2011, Florida adopted a protocol that substituted pentobarbital for sodium pentothal as the first drug in the protocol.  And on September 4, 2012, Florida adopted a protocol that substituted vecuronium bromide for pancuronium bromide as the second drug in the protocol.

On November 29, 2012, Mann began filing grievances with prison officials about the changes to the drugs.  On December 3, 2012, the warden denied Mann's emergency grievance and instructed him to file an informal grievance first and then a formal grievance.  Mann then filed his informal grievance on December 17, 2012, and the warden denied the grievance December 26, 2012.  Mann filed a formal grievance on December 30, 2012, and the warden denied the grievance on January 22, 2013.  Mann then filed a grievance with the Secretary of the Florida Department of Corrections on January 27, 2013, and the Department denied that grievance on February 8, 2013.

On February 18, 2013, Mann moved to intervene in a pending action against the warden and the Department that challenged the protocol adopted in 2011 and to

4

amend the complaint in that action to challenge too the protocol adopted in 2012. On March 1, 2013, the Governor signed a death warrant for Mann and scheduled his execution for April 10, 2013, at 6:00 p.m. And on March 7, 2013, the district court denied Mann's motion to intervene in the pending action.

On March 8, 2013, Mann filed a complaint against John Palmer, in his official capacity as the Warden of the Florida State Prison, and Michael D. Crews, in his official capacity as the Secretary of the Florida Department of Corrections. The complaint is nearly identical to Mann's complaint filed in 2010. The only differences between the complaint Mann filed in 2013 and his earlier complaint are new allegations that pentobarbital is not interchangeable with sodium pentothal; that the protocol fails to specify the temperature at which pentobarbital must be stored; and that, because of the decision of the manufacturer to restrict the sale of pentobarbital for use in capital punishment, Florida must have expired, compounded, or illegally-obtained pentobarbital that would not be safe to use in the lethal injection protocol. Mann also substituted the word "vecuronium" for the word "pancuronium" in his allegations about pancuronium bromide from his earlier complaint, but Mann failed to make any specific allegations about why vecuronium bromide is materially different from pancuronium bromide.

The district court ordered Mann to file a memorandum that addressed whether his new complaint was barred by res judicata as a result of the dismissal of

5

his earlier complaint.  Mann argued that his claims were not barred because the parties were not identical, as he had not named Does 1-50, executioners for the State of Florida in the action filed in 2013.  Mann also argued that the complaint filed in 2013 presented a different cause of action because of the two changes to the drugs listed in the three-drug protocol.  Finally, Mann argued that the dismissal of the complaint filed in 2010 relied on Baze, and the legal landscape had been "substantially altered" since Baze because of the availability of the one-drug protocol as a feasible alternative to the three-drug protocol.

The district court ordered the defendants to file a response to Mann's new complaint.  The defendants moved to dismiss or grant a summary judgment in their favor on the grounds that Mann's new complaint was barred by res judicata, the statute of limitations, the failure to exhaust administrative remedies, and the failure to state a claim upon which relief could be granted.

On March 17, 2013, Mann filed a motion to amend his complaint to allege a new claim that he had been arbitrarily denied access to updated clemency proceedings by the Governor before he issued Mann's death warrant, and Mann alleged that his due process rights were violated by a state law that prohibits capital collateral regional counsel from representing him in a civil action that challenges anything other than his method of execution.  The defendants opposed the motion on the grounds that Mann had been dilatory and his new claims were futile.

6

Specifically, the defendants argued that Mann knew updated clemency proceedings could commence after this Court denied a certificate of appealability for the denial of Mann's petition for a writ of habeas corpus on August 15, 2011, and that he was fully aware of all of the information and allegations in his motion to amend when he filed the action. The defendants also argued that Mann was previously given a clemency proceeding, which satisfied his right to due process. And the defendants argued that state law provided for the appointment of independent clemency counsel and Mann had not sought appointment of that counsel, so the limitations on capital collateral regional counsel did not establish the denial of due process.

On April 1, 2013, the district court granted the defendants' motion to dismiss and denied Mann's motion to amend his complaint. The district court rejected Mann's challenge to the three-drug protocol on the grounds identified in two recent unpublished decisions of our Court that rejected similar challenges to the three-drug protocol in Florida. And the district court denied Mann's motion to amend because it would be futile. The district court explained that Mann had received a full clemency proceeding years ago at which he was represented by counsel and that due process did not require the Governor to grant him a new clemency proceeding.

## II.  DISCUSSION

Mann bears the burden of establishing that he is entitled to a stay of execution.  "A stay of execution is equitable relief which this Court may grant only if the moving party shows that: (1) he has a substantial likelihood of success on the merits; (2) he will suffer irreparable injury unless the injunction issues; (3) the stay would not substantially harm the other litigant; and (4) if issued, the injunction would not be adverse to the public interest."  Valle v. Singer, 655 F.3d 1223, 1225 (11th Cir. 2011).  Mann's motion fails at the first step of that analysis.

Mann cannot establish a substantial likelihood of success for three reasons.  First, most of Mann's claims are barred by res judicata.  Second, Mann's claims about the new drugs in the three-drug protocol are barred by the statute of limitations and, even if they were not, Mann has not stated plausible claims for relief under the Eighth Amendment.  Third, Mann received due process in the clemency proceedings provided by the Governor.  Because Mann cannot establish a substantial likelihood of success on the merits of his complaint, we deny Mann's motion for a stay of execution.

### A.  Most of Mann's Claims Are Barred by Res Judicata.

Most of the claims alleged in Mann's complaint are barred by res judicata.  "In the Eleventh Circuit, a party seeking to invoke the doctrine [of res judicata] must establish its propriety by satisfying four initial elements: (1) the prior

8

decision must have been rendered by a court of competent jurisdiction; (2) there must have been a final judgment on the merits; (3) both cases must involve the same parties or their privies; and (4) both cases must involve the same causes of action." In re Piper Aircraft Corp., 244 F.3d 1289, 1296 (11th Cir. 2001). "The court next determines whether the claim in the new suit was or could have been raised in the prior action; if the answer is yes, res judicata applies." Id. Under that analysis, the dismissal of Mann's earlier complaint bars most of the claims in Mann's new complaint.

Mann concedes that the dismissal of his earlier complaint satisfies the first two elements of the doctrine of res judicata, but the parties dispute whether Mann's earlier and later actions satisfy the last two elements. We address each of those elements in turn.

Mann argues that the cases do not involve the same parties because his first action named defendants who are not defendants in this action, but that argument fails. For the purpose of res judicata, identity of parties is satisfied if the parties to the second action were either parties to the first action or in privity with those parties. See E.E.O.C. v. Pemco Aeroplex, Inc., 383 F.3d 1280, 1285 (11th Cir. 2004). Because Mann's new complaint is against the Warden and Secretary of the Department of Corrections in their official capacities, and his earlier complaint also named the Warden and Secretary of the Department of Corrections in their

9

official capacities, the defendants have established identity of parties. See Welch v. Laney, 57 F.3d 1004, 1009 (11th Cir. 1995) ("[W]here a plaintiff brings an action against a public official in his official capacity, the suit is against the office that official represents, and not the official himself.").

Mann also contends that his claims do not involve the same cause of action, but we disagree. "In determining whether the causes of action are the same, a court must compare the substance of the actions, not their form. It is now said, in general, that if a case arises out of the same nucleus of operative fact, or is based upon the same factual predicate, as a former action, that the two cases are really the same 'claim' or 'cause of action' for purposes of res judicata." In re Piper, 244 F.3d at 1297. Mann's new complaint arises out of the same nucleus of operative facts as his earlier complaint.

Mann's two complaints are nearly identical. In his latest complaint, he alleges the same constitutional errors in the lethal injection procedures, including the use of potassium chloride as the third drug in the three-drug protocol because it will cause torturous pain if the inmate is not sufficiently anesthetized before its administration; the failure of the protocol to establish a minimum experience requirement for some of the personnel involved in the lethal injection process; the failure of the protocol to require a physician to place a central venous line if necessary; the absence of guidelines for the exercise of discretion if foreseeable

10

problems arise during an execution; the absence of standardized procedures for the purchase and administration of chemicals; the lack of a clear definition of "medically qualified" as pertaining to the two assigned executioners; the means of assessing consciousness after the administration of the first drug in the three-drug protocol; the method of remote drug administration through several feet of tubing; the procedure that dictates that the curtains between the witness room and execution chamber be closed in the event that something goes wrong during the execution; the "consistent fail[ure]" to hire sufficiently competent people to perform executions and to react to problems that occur during an execution; the absence of any procedures that require an individualized assessment of specific medical conditions of the inmate; and the lack of protocols to address the medical actions that must be taken to resuscitate an inmate if a stay of execution is entered during the administration of the three drugs. These claims all arise out of the same nucleus of operative facts alleged in the earlier complaint. It is irrelevant that Mann brought many of these claims under both the Constitution of the United States, the Constitution of the State of Florida, and a Florida statute in his new complaint, but only under the Constitution of the United States in his earlier complaint. See Maldonado v. U.S. Att'y Gen., 664 F.3d 1369, 1377 (11th Cir. 2011) ("A new claim is barred by res judicata if it is based on a legal theory that

11

was or could have been used in the prior action.").  Res judicata bars Mann from relitigating these claims.

### B.  Mann Cannot Establish a Substantial Likelihood of Success on the Merits of the Remaining Claims in His Complaint.

The only claims brought by Mann that are not barred by res judicata involve the new first and second drugs in the three-drug protocol.  Mann's new complaint challenges the substitution of pentobarbital for sodium pentothal as the first drug in the protocol.  He alleges that pentobarbital increases the risk that he will not be sufficiently unconscious before the administration of the second and third drugs, and he alleges that Florida lacks a safe, current, or adequate supply of pentobarbital.  Mann's new complaint also makes allegations about vecuronium bromide, but those allegations are about the use of a paralytic drug in general and offer no basis on which we could conclude that vecuronium bromide operates in any manner different from pancuronium bromide.

Mann cannot establish a substantial likelihood of success on the merits of these claims for two reasons.  First, these claims are barred by the statute of limitations.  Second, even if these claims were not barred by the statute of limitations, Mann's claims would fail on the merits.

#### 1.  Mann's New Claims Are Barred by the Statute of Limitations.

"[A] method of execution claim accrues on the later of the date on which state review is complete, or the date on which the capital litigant becomes subject

12

to a new or substantially changed execution protocol." McNair v. Allen, 515 F.3d 1168, 1174 (11th Cir. 2008). Mann's state review was complete on January 19, 1993, when the Supreme Court of the United States denied his petition for a writ of certiorari to the Supreme Court of Florida on direct appeal of the entry of his third death sentence. See Mann v. Florida, 506 U.S. 1085, 113 S. Ct. 1063 (1993). The statute of limitations for challenges to the adoption of lethal injection as the method of execution in Florida began to run on February 13, 2000, and expired on February 13, 2004. Henyard v. Sec'y, Dep't of Corr., 543 F.3d 644, 647 (11th Cir. 2008).

Mann contends that his claims with respect to the new drugs are timely because Florida made a substantial change to the method of execution, on June 8, 2011, when it substituted pentobarbital as the first drug in the three-drug protocol. Specifically, he alleges that pentobarbital differs significantly from sodium pentothal because it "is not classified as an 'ultra short-acting barbiturate'"; "is less lipid-soluble"; "is not FDA-approved for use as an anesthetic, and in clinical practice, it is not used to induce anesthesia"; and "there is no standard clinical dose of pentobarbital to induce loss of consciousness or loss of sensation, making it much harder to determine how much pentobarbital would constitute a sufficient overdose to induce anesthesia in the context of an execution."

13

Because Mann is to be executed in Florida, we remain bound by our prior panel precedent in Valle that Florida did not make a significant change in its lethal injection protocol when it substituted pentobarbital for sodium pentothal. See 655 F.3d at 1233. Mann makes the same allegations about pentobarbital that we considered and rejected in Valle based on our prior panel precedents in DeYoung v. Owens, 646 F.3d 1319 (11th Cir. 2011), Powell v. Thomas, 643 F.3d 1300 (11th Cir. 2011), and Powell (Williams) v. Thomas, 641 F.3d 1255 (11th Cir. 2011). See Valle, 655 F.3d at 1227–28 (rejecting the inmate's allegations that "[the inmate] may be conscious after being injected with pentobarbital, and thus subjected to significant pain during the administration of the final two drugs"; that pentobarbital is "untested and unsafe for use in judicial lethal injections, has not been approved by the Food and Drug Administration (FDA) to induce anesthesia, has no relevant clinical history, and no relevant clinical reference doses on which to determine what dose would cause a clinically adequate depth of anesthesia, much less an adequate lethal injection dose"; and that the combination of the use of pentobarbital with the "inadequate training and experience of execution team members, inadequate monitoring of the IV lines, inadequate monitoring of consciousness by unqualified individuals, [and the] failure [of Florida] to conduct meaningful review of its processes" present a serious risk of undue pain and suffering (internal quotation marks omitted)). And, in Valle, we reaffirmed our

14

statement in DeYoung that "the mere act of proffering additional reasons not expressly considered previously will not open the door to reconsideration of the [statute of limitations] question by a second panel." See Valle, 655 F.3d at 1231 (quoting DeYoung, 646 F.3d at 1325).

Mann argues that we are bound, under Arthur v. Thomas, 674 F.3d 1257 (11th Cir. 2012), to reverse the dismissal of his claims to allow him an opportunity for evidentiary development, but Mann misreads our narrow holding in Arthur. In that appeal, we reversed a dismissal of Arthur's complaint under Rule 12(b)(6) because the district court had determined that it could not consider new allegations and evidence presented by Arthur that "there ha[d] been a 'significant change' to Alabama's execution protocol." See Arthur, 674 F.3d at 1260–61. Arthur attached to his complaint the affidavits of two experts who provided new "evidence of how pentobarbital is actually administered in Alabama." Id. at 1262. We concluded that Arthur's complaint presented materially different facts from our earlier cases. Id. ("These significant differences between the factual allegations and supporting affidavits in this case, which we must assume to be true at the motion to dismiss stage, render Arthur's case distinct from the facts and circumstances addressed in our previous decisions."). We explained that the district court should have considered the expert affidavits that Arthur had attached to his complaint and determined whether the facts alleged in his complaint were materially different

15

from the allegations and evidence presented in our previous decisions in Powell and Powell (Williams). But if the allegations or evidence in Arthur had been materially the same as those presented in Powell, the district court would have been obliged to dismiss Arthur's complaint as untimely. See Arthur, 674 F.3d at 1261–62; Powell, 643 F.3d at 1304–1305.

Arthur did not hold, nor could it have, that every inmate who files a complaint that challenges the use of pentobarbital is entitled to an evidentiary hearing to determine whether the substitution of pentobarbital is a substantial change in the method of execution. We had already foreclosed that argument in Powell, where we had held that an inmate's complaint was governed by our prior panel precedent that the substitution of pentobarbital for sodium pentothal did not constitute a significant change for the purpose of the statute of limitations. See 643 F.3d at 1304–05. To read Arthur, as Mann contends, to require a district court to allow an inmate to conduct discovery every time the inmate alleges that the state has substantially altered its lethal injection procedures without first resolving whether the complaint is barred by the statute of limitations would be inconsistent with Arthur itself, which distinguished Powell, Valle, and DeYoung, and with our obligation to reconcile the holdings of our prior panel precedents if possible, United States v. Hogan, 986 F.2d 1364, 1369 (11th Cir. 1993). Arthur also, by its terms, does not bind us when faced with challenges to the current lethal injection

16

protocols of Florida and Georgia.  See Arthur, 674 F.3d at 1261 & n.4 (distinguishing our prior panel precedents in DeYoung and Valle on the basis that DeYoung considered whether the substitution of pentobarbital for sodium pentothal was a substantial change to the lethal injection protocol in Georgia and Valle considered the same question in Florida, but Arthur concerned different facts about the lethal injection protocol in Alabama).

Because Mann cannot establish that the substitution of pentobarbital constituted a significant alteration to the method of execution in Florida, all of his claims not barred by res judicata are untimely.  In his pleading and papers in the district court, Mann relied solely on the substitution of pentobarbital as the significant change in the method of execution that commenced the running of a new period of limitations.  Mann never alleged that the substitution of the second drug in the protocol constituted a significant change to the method of execution in Florida.  Indeed, Mann never alleged that vecuronium bromide differs in any material way from pancuronium bromide.  Because Valle established that the substitution of pentobarbital for sodium pentothal does not constitute a significant change in the method of execution in Florida, Mann's claims are untimely.

## 2.  Mann's Claims Also Fail on the Merits.

Even if Mann's claims were not untimely, Mann would not be able to establish a substantial likelihood of success on the merits.  "To state an Eighth

17

Amendment claim, [the defendant] must demonstrate that (1) the State is being deliberately indifferent (2) to a condition that poses a substantial risk of serious harm to him.  In the lethal injection context, this standard requires an inmate to show an objectively intolerable risk of harm that prevents prison officials from pleading that they were subjectively blameless for purposes of the Eighth Amendment."  Valle, 655 F.3d at 1225.  Mann has two main theories upon which he claims that Florida has violated his Eighth Amendment rights, each of which fails to meet this standard.

First, Mann alleges that the substitutions of pentobarbital for sodium pentothal and vecuronium bromide for pancuronium bromide create a substantial risk of excruciating pain when compared to known and available alternatives, but Mann has not established a substantial likelihood of success on the merits of this claim.  After Baze, an inmate who seeks a stay of execution must establish that the lethal injection protocol of his state creates a demonstrated risk of severe pain that is substantial when compared to the known alternatives.  See 553 U.S. at 61, 128 S. Ct. at 1537.  The Supreme Court has explained that "a lethal injection protocol substantially similar to the protocol [involving sodium pentothal, pancuronium bromide, and potassium chloride] [does] not create a risk that meets this standard."  Id.  Because Mann does not allege that vecuronium bromide differs in any way from pancuronium bromide, he must rely solely on his allegations about

18

pentobarbital to meet this standard.  With respect to pentobarbital, Mann alleges that the risk of harm to him by its use is increased because "pentobarbital is not []approved for use as an anesthetic [by the Food and Drug Adminsitration]," "[p]entobarbital has an extended length of action due to its lower lipid solubility," "there is no standard clinical dose of pentobarbital to induce loss of consciousness or loss of sensation," and "[s]toring pentobarbital at a temperature cooler than recommended can slow down the time for the drug to take effect."  But these allegations fail.  The Supreme Court has rejected the notion that the absence of approval by the Administration is sufficient to establish a substantial risk of severe pain.  Brewer v. Landrigan, __ U.S. __, 131 S. Ct. 445 (2010) (vacating a temporary restraining order because speculation that a drug that has not been approved will lead to severe pain or suffering "cannot substitute for evidence that the use of the drug is sure or very likely to cause serious illness and needless suffering" (internal quotation marks omitted)).  And the fact that pentobarbital might take longer to anesthetize the inmate does not create a demonstrated and substantial risk of severe pain.  See Valle, 655 F.3d at 1237; DeYoung, 646 F.3d at 1327.  Although Mann mentioned an alternative procedure in a memorandum filed in the district court, he "failed to show that any such alternative procedure or drug is 'feasible, readily implemented, and in fact significantly reduce[s] a substantial

19

risk of severe pain.'"  Valle, 655 F.3d at 1237 (quoting Baze, 553 U.S. at 52, 128 S. Ct. at 1532).

Second, Mann alleges that Florida lacks "a safe, current, or adequate supply of pentobarbital," but he failed to state sufficient facts to make this claim plausible. See Fed. R. Civ. P. 12(b)(6).  We take as true Mann's allegations that the previous manufacturer of pentobarbital, Lundbeck, implemented a program in which it requires purchasers of pentobarbital to promise not to redistribute any purchased product without written authorization from Lundbeck and to agree not to make the product available for use in capital punishment.  We also take as true his allegation that Akorn Pharmaceuticals maintains this restricted distribution program for pentobarbital.  But we do not have to take as true Mann's allegations "upon information and belief" that the supply of pentobarbital possessed by Florida is either expired, illegally obtained, or compounded pentobarbital.  See Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 551, 557, 127 S. Ct. 1955, 1962–63, 1966 (2007) (declining to take as true the conclusory allegation "upon information and belief" that the companies had entered a conspiracy without enough facts to make that statement plausible).  Mann has not alleged enough facts to nudge his claim that Florida possesses only expired, illegally obtained, or compounded pentobarbital across the line from conceivable to plausible.  See id. at 570, 127 S. Ct. at 1974.

20

Mann contends that Arthur forecloses the dismissal of his complaint on the merits, but we disagree. Arthur does not preclude a district court from concluding that a death-row inmate has failed to state a plausible claim for relief on a motion to dismiss under Rule 12(b)(6). In Arthur, the district court had summarily dismissed the inmate's complaint solely on the basis of the statute of limitations without considering any of the new allegations presented by Arthur about the administration of pentobarbital in Alabama and about the secrecy Alabama maintains about every aspect of its three-drug execution method, and we decided the narrow question whether that dismissal was appropriate. 674 F.3d at 1259. We did not consider whether Arthur had stated a plausible claim under the Eighth Amendment. Nor did we consider whether Arthur could establish that he had a substantial likelihood of success on the merits to warrant a stay of execution.

### C. Mann Cannot Establish a Substantial Likelihood of Success on the Merits of His Claim About the Updated Clemency Proceedings.

Mann appeals the refusal of the district court to grant him leave to amend his complaint to state a claim that he was denied access to the updated clemency proceeding that took place before the Governor signed his death warrant, but Mann cannot establish a substantial likelihood of success on the merits of this claim. "We review the district court's refusal to allow the proposed amendments for abuse of discretion." Maynard v. Bd. of Regs. of the Div. of Univs. of the Fla. Dep't of Educ. ex rel. Univ. of S. Fla., 342 F.3d 1281, 1286 (11th Cir. 2003).

21

"Although leave to amend shall be freely given when justice so requires, a motion to amend may be denied on numerous grounds such as undue delay, undue prejudice to the defendants, and futility of the amendment." Id. at 1287 (internal quotation marks omitted). "[W]e review de novo a decision that a particular amendment to the complaint would be futile." Cockrell v. Sparks, 510 F.3d 1307, 1310 (11th Cir. 2007). The district court did not abuse its discretion when it denied Mann's motion to amend his complaint because it correctly determined that the amendment would be futile.

Mann argues that the State of Florida violated his rights when the Governor considered an updated clemency investigation before he signed the death warrant and did not give Mann an opportunity to be heard and represented by counsel in those proceedings, but that argument fails. The Constitution of the State of Florida vests in the Governor, with the approval of two of his cabinet members, the discretion to commute the punishment of individuals not convicted of treason or impeachment. Fla. Const. Art. 4, § 8. Because clemency is committed to the discretion of the executive, due process provides only minimal protections for death-row inmates in the clemency process. Ohio Adult Parole Auth. v. Woodard, 523 U.S. 272, 289, 118 S. Ct. 1244, 1254 (1998) (O'Connor, J., concurring in part and concurring in the judgment). "Judicial intervention might, for example, be warranted in the face of a scheme whereby a state official flipped a coin to

22

determine whether to grant clemency, or in a case where the State arbitrarily denied a prisoner any access to its clemency process." Id.  Mann cannot show any violation of his due process rights in the clemency proceedings conducted by the State of Florida.  The Governor conducted a full clemency hearing in 1985 before he signed Mann's first death warrant.  Court-appointed counsel represented Mann at that hearing.  And Florida law did not obligate the Governor to grant Mann a second clemency hearing before he signed Mann's current death warrant.  Gore v. State, 91 So. 3d 769, 779–80 (Fla. 2012).  "The process [Mann] received, including notice of the hearing and an opportunity to participate . . . comports with [Florida's] regulations and observes whatever limitations the Due Process Clause may impose on clemency proceedings."  Woodard, 523 U.S. at 290, 118 S. Ct. at 1254 (O'Connor, J., concurring in part and concurring in the judgment).

### III.  CONCLUSION

We **DENY** Mann's motion to expedite his appeal, and we **DENY** Mann's motion for a stay of execution.

MARTIN, Circuit Judge, concurring in part and dissenting in part:

Larry Mann has another case pending in this court, in which he appealed from the denial of his motion brought pursuant to Federal Rule of Civil Procedure 60(b). I dissented from the denial of a certificate of appealability in that case. See Larry Eugene Mann v. Michael W. Moore, No. 13-11322 (11th Cir. April 8, 2013). I write now with regard to the separate issues raised by Mr. Mann in this appeal of the District Court's denial of relief pursuant to 42 U.S.C. § 1983.

First, Mr. Mann applies for a stay of execution based on his challenge to the lethal injection procedures implemented by the State of Florida. I concur in the result reached by the majority on that claim. This Court's binding precedent compels the conclusion that Mr. Mann has not shown a likelihood of success on the merits based on the claim he presented. See, e.g., Ferguson v. Warden, Fla. State Prison, et al., 493 F. App'x 22 (11th Cir. 2012) (per curiam) (affirming denial of stay in § 1983 case challenging Florida's lethal injection protocol); DeYoung v. Owens, 646 F.3d 1319 (11th Cir. 2011); Powell v. Thomas, 641 F.3d 1255 (11th Cir. 2011) (per curiam); Valle v. Singer, 655 F.3d 1223 (11th Cir. 2011) (per curiam); see also Baze v. Rees, 553 U.S. 35, 128 S. Ct. 1520 (2008).

However, I do not agree with the majority ruling regarding Mr. Mann's attempt to amend his § 1983 complaint to include a claim that the State arbitrarily denied him access to his clemency proceedings. Specifically, I do not share the

24

majority's confidence that the District Court properly denied Mr. Mann the opportunity to amend his complaint because the claim was futile.  Mr. Mann filed his § 1983 complaint on March 8, 2013, see Doc. 1, and nine days later filed a motion to amend his complaint to include his clemency claim, see Doc. 16.  Under Federal Rule of Civil Procedure 15(a), Mr. Mann was entitled to amend his pleading "once as a matter of course within . . . 21 days after serving it."  Fed. R. Civ. P. 15(a)(1)(A).

If Mr. Mann had been allowed to amend his complaint, we would necessarily consider the Supreme Court's decision in Ohio Adult Parole Authority v. Woodard, which rejected the principle that "because clemency is committed to the discretion of the executive, the Due Process Clause provides no constitutional safeguards."  523 U.S. 272, 288, 118 S. Ct. 1244, 1253 (1998) (O'Connor, J., concurring in part and concurring in the judgment).  We know some minimal due process applies to clemency proceedings from Justice O'Connor's concurring opinion in Woodard, which we view as the holding of the Court:[1]  "A prisoner under a death sentence remains a living person and consequently has an interest in his life."  Id.  As Justice O'Connor explained:

---

[1] See United States v. Lawson, 686 F.3d 1317, 1321 n.2 (11th Cir. 2012) ("Generally, when a Supreme Court decision lacks a majority opinion, 'the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds.'" (quoting Marks v. United States, 430 U.S. 188, 193, 97 S. Ct. 990, 993 (1977)).

> [A]lthough it is true that "pardon and commutation decisions have not traditionally been the business of courts," and that the decision whether to grant clemency is entrusted to the Governor under Ohio law, I believe that the Court of Appeals correctly concluded that some <u>minimal</u> procedural safeguards apply to clemency proceedings. Judicial intervention might, for example, be warranted in the face of a scheme whereby a state official flipped a coin to determine whether to grant clemency, or in a case where the State arbitrarily denied a prisoner <u>any access to its clemency process</u>.

<u>Id.</u> at 289, 118 S. Ct. at 1254 (O'Connor, J., concurring in part and concurring in the judgment) (second emphasis added) (internal citation omitted).  I fully recognize that the contours of what "<u>minimal</u> procedural safeguards" are sufficient to satisfy due process—beyond coin flipping and denying "a prisoner any access to its clemency process"—have not been established since <u>Woodard</u>.  <u>Id.</u>  But it is the latter phrase that gives me pause here.

The due process issue in Mr. Mann's case is unusual because his 1985 clemency proceeding related to the same underlying conviction, but to a different sentence of death.[2]  On the one hand, it appears that Mr. Mann was provided a clemency investigation in 1985 that included notice,

---

[2] A clemency hearing was conducted in 1985, the same year that Mr. Mann's direct appeal became final.  <u>See</u> <u>Mann v. Florida</u>, 469 U.S. 1181, 105 S. Ct. 940 (1985).  The Governor of Florida denied clemency and signed Mr. Mann's first death warrant on January 7, 1986.  Mr. Mann unsuccessfully sought collateral relief in state court.  <u>See</u> <u>Mann v. State</u>, 482 So. 2d 1360 (Fla. 1986).  The District Court denied relief as well, but this Court reversed, vacated Mr. Mann's death sentence, and Mr. Mann received a resentencing hearing before a newly empaneled jury.  <u>Mann v. Dugger</u>, 844 F.2d 1446 (11th Cir. 1988) (en banc).  Mr. Mann was again sentenced to death and that death sentence was affirmed on direct appeal.  <u>Mann v. State</u>, 603 So. 2d 1141 (Fla. 1992).

representation by counsel, and an opportunity to be heard.  On the other hand, Mr. Mann claims he has never had a clemency proceeding on the now pertinent death sentence, imposed in 1990 after he had been resentenced by a newly empaneled jury.  See Mann, 603 So. 2d 1141.  More specifically, Mr. Mann tells us that "[n]either [he], nor his counsel, were advised that the Governor had conducted an updated clemency investigation and clemency proceedings" before the Governor signed his current death warrant on March 1, 2013.  Doc. 16 at 5.  Further, Mr. Mann says that he was denied all access to any records of the clemency proceedings conducted prior to his March 1, 2013 warrant; counsel was not appointed; and he was not given any notice of the proceedings or opportunity to be heard.  Id. at 5–7.

I understand Mr. Mann to be arguing that he has arbitrarily been denied any access to Florida's clemency process for the specific sentence of death set to be carried out this week.  As I mentioned, this argument gives me pause.  That is because the Supreme Court has acknowledged that clemency proceedings have an important role to play in the administration of the death penalty.  See Harbison v. Bell, 556 U.S. 180, 194, 129 S. Ct. 1481, 1491 (2009) (holding that the Criminal Justice Act, 18 U.S.C. § 3559(e) authorizes federally appointed counsel to represent death row prisoners in state clemency proceedings); id. at 192, 129 S. Ct. at 1490 ("Far from

27

regarding clemency as a matter of mercy alone, we have called it the fail safe in our criminal justice system.") (quotation marks omitted); <u>Herrera v. Collins</u>, 506 U.S. 390, 411–12, 113 S. Ct. 853, 866 (1993) (recognizing that "[c]lemency is deeply rooted in our Anglo-American tradition of law, and is the historic remedy for preventing miscarriages of justice where judicial process has been exhausted") (footnote omitted).

Given what I know of the facts underlying Mr. Mann's clemency claim, I am not prepared to say that it is futile.  At the same time, without full briefing, and full development of the issues in the District Court, it is hard to know Mr. Mann's likelihood of success on the merits, and such a finding is required to support a stay of execution.  See <u>DeYoung</u>, 646 F.3d at 1324 (stating a court may only grant a stay of execution if the moving party shows he has a "substantial likelihood of success on the merits") (quotation marks omitted).  Because "a stay of execution is an equitable remedy," <u>Hill v. McDonough</u>, 547 U.S. 573, 584, 126 S. Ct. 2096, 2104 (2006), and Mr. Mann will certainly suffer irreparable injury if his execution is carried out, I would proceed with caution by issuing a temporary stay that allowed for full and fair briefing so the parties could more adequately address the problematic and troublesome issues presented by this appeal.

For these reasons, I respectfully concur in part and dissent in part from the opinion of the majority.