[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAY 19, 2011
JOHN LEY
CLERK

_____

No. 11-12238

_____

D.C. Docket No. 2:11-cv-00376-WKW

EDDIE D. POWELL,

                                        Plaintiff,

JASON ORIC WILLIAMS,

                                        Intervenor Plaintiff - Appellant,

    versus

KIM THOMAS,
Interim Commissioner, Alabama
Department of Corrections,
individually and in his official capacity,
ANTHONY PATTERSON,
Warden, Holman Correctional Facility,
individually and in his official capacity,

                                        Defendants - Appellees.

_____

Appeal from the United States District Court
for the Middle District of Alabama

_____

(May 19, 2011)

Before TJOFLAT, EDMONDSON and WILSON, Circuit Judges.

PER CURIAM:

Jason Williams is currently on death row in Alabama.[1] He is scheduled to be executed at 6:00 p.m. on Thursday, May 19, 2011. In late April, the Alabama Department of Corrections ("ADOC") announced plans to alter its lethal injection protocol for Williams's execution. Specifically, it would be replacing the first drug in its lethal injection protocol—sodium thiopental—with another anesthetic—pentobarbital. That decision resulted from a heavily publicized, nationwide shortage of sodium thiopental. Alabama, along with a number of other states, selected pentobarbital as a replacement to ensure that it could continue to carry out executions regardless of sodium thiopental's availability. Williams filed a motion for stay of execution in the Alabama Supreme Court alleging, *inter alia*, that the ADOC's protocol change will result in a violation of his Eighth Amendment right to be free from cruel and unusual punishment. The Alabama Supreme Court denied his request. He then filed a similar motion in federal district court, which the court denied. Williams filed an appeal with this Court, again asking for a stay of execution. After careful review, we conclude that the district court did not abuse its discretion, and, accordingly, we affirm.

---

[1] The details of Williams's crimes are recapitulated in many court opinions. *See, e.g.*, *Williams v. Allen*, 598 F.3d 778 (11th Cir. 2010).

I.

We review the denial of a stay of execution under the abuse-of-discretion standard. *See Jones v. Allen*, 485 F.3d 635, 639 (11th Cir. 2007). A stay of execution is equitable relief. *Williams v. Allen*, 496 F.3d 1210, 1212–13 (11th Cir. 2007). This Court may grant a stay of execution only if the moving party shows that: (1) he has a substantial likelihood of success on the merits; (2) he will suffer irreparable injury unless the injunction issues; (3) the stay would not substantially harm the other litigant; and (4) if issued, the injunction would not be adverse to the public interest. *See In re Holladay*, 331 F.3d 1169, 1176 (11th Cir. 2003).

II.

"That the Eighth Amendment protects against future harm to inmates is not a novel proposition." *Helling v. McKinney*, 509 U.S. 25, 33, 113 S. Ct. 2475 (1993). A typical Eighth Amendment[2] challenge—alleging that the State will inflict cruel or unusual punishment—requires the defendant to demonstrate that (1) the State is being deliberately indifferent (2) to a condition that poses a substantial risk of serious harm to him. *Farmer v. Brennan*, 511 U.S. 825, 828, 114 S. Ct. 1970 (1994). As a plurality of the Supreme Court summarized, "to prevail on such a claim there must be a 'substantial risk of serious harm,' an

---

[2] The Eighth Amendment is applicable to the states through the Fourteenth Amendment's Due Process Clause. *Robinson v. California*, 370 U.S. 660, 666, 82 S. Ct. 1417 (1962).

'objectively intolerable risk of harm' that prevents prison officials from pleading that they were 'subjectively blameless for purposes of the Eighth Amendment.'" *Baze v. Rees*, 553 U.S. 35, 50, 128 S. Ct. 1520 (2008) (plurality opinion) (quoting *Farmer*, 511 U.S. at 842, 846 & 847 n.9).[3] Therefore, in order to obtain relief, Williams must demonstrate that there is a substantial likelihood he can satisfy those requirements. We conclude he cannot.

Ultimately, the most relevant evidence presented consisted of (1) an expert report, introduced by Williams, challenging the use of pentobarbital in Oklahoma executions, and (2) an expert report, submitted by the State, asserting that the use of pentobarbital in the Alabama lethal injection protocol presents "an exceedingly small risk that a condemned inmate . . . would experience any pain or suffering associated with the administration of lethal doses of pancuronium bromide and potassium chloride." The federal courts that considered Oklahoma's use of pentobarbital ultimately rejected the expert report that Williams now offers. *See Pavatt v. Jones*, 627 F.3d 1336, 1340 (10th Cir. 2010). The evidence present does not demonstrate that the ADOC's use of pentobarbital creates substantial risk of serious harm to Williams. We are unable to determine that the district court abused its discretion by crediting the expert report submitted by the State and

---

[3] This Court has never engaged in extended analysis to determine the exact holding of the extraordinarily fractured *Baze* Court. We cite it here for its summary of unquestionable, controlling precedent and decline to address its full reach.

concluding that Williams has not demonstrated a substantial likelihood of success on the merits of this Eighth Amendment claim.

## III.

In attempting to avoid the legal prism typically used for analyzing similar Eighth Amendment claims, *see supra*, Williams asserts that he has a broad Eighth Amendment right to know the details of his execution in order to ensure proper oversight and avoid uncertainty that unnecessarily creates anxiety, which greatly exacerbates his sentence. Williams focuses on *Nelson v. Campbell*, 541 U.S. 637, 124 S. Ct. 2117 (2004), *In re Medley*, 134 U.S. 160, 10 S. Ct. 384 (1890), and *Gregg v. Georgia*, 428 U.S. 153, 96 S. Ct. 2909 (1976), and he argues that these cases establish an Eighth Amendment right to know the details surrounding his execution.

In *Nelson*, the ADOC altered its lethal injection protocol—approximately one week before defendant's execution—to allow for a "cut-down" procedure. 541 U.S. at 640–41. This involved making a two-inch incision in the defendant's arm or leg and catheterizing a vein one hour before the execution with only local anesthetic. *Id*. at 641. The state proposed the "cut down" procedure because standard techniques for gaining intravenous access were unavailable because of the defendant's past drug use. *Id*. at 640. The holding of *Nelson*, however, is "extremely limited." *Id*. at 649. The Court simply concluded that 42 U.S.C.

5

§ 1983 was "an appropriate vehicle for petitioner's Eighth Amendment claim seeking a temporary stay" based on altered execution protocols that could violate a defendant's civil rights. *Id*. at 639. It remanded the case for further proceedings to determine the merits of the defendant's Eighth Amendment claim. *Id*. at 651.

In *Medley*, the Court, analyzing an *ex post facto* claim, concluded that a new Colorado statute imposed a greater penalty than its predecessor because the new law prohibited the warden from disclosing the execution date to the defendant, while the previous statute required a court to inform the defendant of his execution date. 134 U.S. at 170–72. Ultimately, the Court concluded that the "secrecy" surrounding an execution under the new statute "must be accompanied by an immense mental anxiety amounting to a great increase of the offender's punishment," and, therefore, the statute in question violated the Constitution's *ex post facto* clause. *Id*. at 172. *See also Gregg*, 428 U.S. at 173 (prohibiting the "unnecessary and wanton infliction of pain").

We decline to read these cases as establishing a categorical rule entitling defendants to a lethal injection protocol that is legislatively enacted and subjected to extensive litigation. After an *in camera* review, the district court found that the State's representations regarding the amended execution protocol were accurate and adequately informed Williams of the process that would be used. The replacement of sodium thiopental with pentobarbital does not constitute a

significant alteration in the ADOC's lethal injection protocol, and we conclude that such an amendment does not violate the Eighth Amendment under the cases cited by Williams.

## IV.

Ultimately, the district court did not abuse its discretion in denying Williams's motion to stay his execution. Accordingly, we affirm the decision of the district court.

**AFFIRMED.**