PER CURIAM:
Thomas D. Arthur, an Alabama state prisoner sentenced to death, appeals the dismissal of his 42 U.S.C. § 1983 complaint alleging that Alabama’s method of executing inmates by lethal injection violates the Eighth and Fourteenth Amendments to the U.S. Constitution and the separation of powers required by Article III of the Alabama Constitution. Arthur’s execution is currently scheduled to take place on March 29, 2012.
Arthur instituted this challenge[1] to Alabama’s lethal injection procedure when Alabama announced in 2011 that it would switch from using sodium thiopental to pentobarbital as the first of the three drugs in its lethal injection protocol. Arthur alleges that pentobarbital takes substantially longer to render an inmate fully insensate than sodium thiopental and, as a result of this delayed effect, there is a significant risk that Alabama administers the second and third drugs in its lethal injection procedure before pentobarbital has taken effect. Arthur contends that this deficiency in Alabama’s practice of carrying out lethal injections violates his right to be free from cruel and unusual punishment protected by the Eighth Amendment of the U.S. Constitution.
Arthur also alleges that (1) the prison personnel charged with carrying out lethal injections in Alabama fail to follow regular procedures in carrying out lethal injections, in violation of the Equal Protection Clause of the U.S. Constitution; (2) Alabama’s policy of keeping information about its lethal injection procedure secret violates the Due Process Clause of the U.S. Constitution; and (3) Alabama’s lethal injection policies violate the Alabama Constitution by impermissibly delegating lawmaking authority to prison officials.
Alabama moved to dismiss the complaint. The district court dismissed the Eighth Amendment and Due Process claims on statute of limitations grounds and the Equal Protection claim for failing to state a claim upon which relief can be granted. Having dismissed all of Arthur’s federal claims, the district court declined to exercise supplemental jurisdiction over the state law claim. Arthur appeals the dismissal of all four of his claims.

A. Eighth Amendment Violation

The district court dismissed Arthur’s Eighth Amendment claim on the ground that this claim was barred by Alabama’s two-year statute of limitations. See Powell v. Thomas, 643 F.3d 1300, 1303 (11th Cir.2011) (“The two-year limitations period ... applies to section 1983 actions in Alabama.”) (internal quotation marks omitted). In order to defeat Alabama’s statute of limitations defense, Arthur must show that he filed his § 1983 complaint within two years of a significant change in Alabama’s method of administering lethal injections. See McNair v. Allen, 515 F.3d 1168, 1177 (11th Cir.2008).[2] Arthur con *1260 tends that he sufficiently alleged that the substitution of pentobarbital in Alabama’s execution protocol gives rise to an impermissible risk that an inmate will be subject to substantial pain because the second and third drugs in the protocol will be administered prematurely. He argues that the district court erred in dismissing his complaint without considering the evidentiary basis of his claim that, in fact, a significant change has occurred in Alabama.
Whether a significant change has occurred in a state’s method of execution is a fact-dependent inquiry, which we have treated as such in each of our recent cases addressing the lethal injection protocols of Alabama, Georgia and Florida. Although we concluded in Powell v. Thomas, 643 F.3d 1300 (11th Cir.2011), DeYoung v. Owens, 646 F.3d 1319 (11th Cir.2011) and Valle v. Singer, 655 F.3d 1223, 1226 (11th Cir.2011), that the replacement of sodium thiopental with pentobarbital did not constitute a “significant change” in the lethal injection execution protocol, each of these decisions is premised on the specific factual allegations and/or evidence presented and considered in each of those cases. None of the previous courts that were asked to decide whether the substitution of pentobarbital for sodium thiopental is a “significant change” in the lethal injection protocol could have resolved, nor did they resolve, that claim without considering the facts and evidence. Simply because no court, based on the allegations and evidence that has been presented in cases to date, has found a significant change does not mean that such evidence does not exist. To read our circuit decisions in Powell, DeYoung, and Valle as holding — no matter what new facts allege or new evidence reveals — that Alabama’s, Georgia’s and Florida’s substitutions of pentobarbital for sodium thiopental is not a significant change in their execution protocols is to ignore the reality that scientific and medical evidence that exists today may differ from that which new scientific and medical discoveries and research reveal tomorrow.
Specifically, we held in Powell (Williams) v. Thomas that, based on the district court’s review of the evidence and factual findings after a hearing on a death row inmate’s motion to stay his execution, “the evidence presentT did not demonstrate a “substantial likelihood of success on the merits” of the inmate’s Eighth Amendment challenge. 641 F.3d 1255, 1257 (11th Cir.2011). We did so only after determining that the district court had not “abused its discretion” by deciding to credit an expert report submitted by Alabama, id., and only with the benefit of the district court’s finding “that the State’s representations about the amended execution protocol were accurate.” Id. at 1258. Next, in Powell, we reviewed a complaint presenting identical allegations and relying on the same expert testimony and exhibits as were rejected in Powell (Williams), and we affirmed the dismissal of the complaint because its allegations and supporting evidence were indistinguishable from those in Powell (Williams). 643 F.3d at 1302 (noting that Powell’s complaint was “nearly identical” to the one filed in Powell (Williams)); id. at 1303 (reviewing evidence relied on by both Williams and Powell). And in DeYoung and Valle, we affirmed the denial of death-row inmates’ motions to stay their executions with the benefit of extensive fact-finding made by the district court at evidentiary hearings conducted in both cases. See 646 F.3d at 1323 (reviewing district court’s factual findings); 655 F.3d at 1226 (adopting district court’s opinion considering evidence presented at a hearing on a motion for stay of execution).
The district court in Arthur’s case, however, never considered Arthur’s evidence in support of his allegations that there has been a “significant change” to *1261 Alabama’s execution protocol, instead summarily concluding that his Eighth Amendment claim was barred by the statute of limitations.[3] Thus, unlike each of our recent precedents dismissing inmates’ § 1983 lethal injection execution claims, we have no evidentiary basis whatsoever on which to conclude whether, as Arthur alleges, a “substantial change” in Alabama’s administration of its execution protocol has occurred. McNair, 515 F.3d at 1177. There has been no finding about the manner in which Alabama administers its lethal injections, no evaluation of whether Alabama’s representations are accurate, and no opportunity whatsoever to contradict the State’s assertions with Arthur’s own evidence. And the lack of factual development in this record is only exacerbated by Alabama’s policy of maintaining secrecy surrounding every aspect of its three-drug execution method.
For several reasons, we conclude that Arthur’s Eighth Amendment allegations are not so similar to those presented in our previous cases that his complaint can be dismissed on a Rule 12(b)(6) motion. See Anders v. Hometown Mortg. Svcs., 346 F.3d 1024, 1031 (11th Cir.2003) (holding that disposition of a previous case may bind a subsequent decision only when the “facts and circumstances [are] sufficiently similar to those under which [the previous decision] arose.”). In DeYoung, we concluded that the evidence presented at an evidentiary hearing showed that no substantial change had occurred in Georgia’s method of execution within two years of the filing of the plaintiffs complaint in 2011. 646 F.3d at 1325 (concluding that the evidence presented did not show a substantial change and proceeding to review this evidence). However, that Georgia’s method of execution may not have undergone a substantial change in the relevant time period has no bearing on the factual question of whether a substantial change has occurred in the way that Alabama administers its method of execution, as Arthur’s complaint alleges.[4]
Our holdings in Powell and Powell (Williams), unlike DeYoung, involved challenges to Alabama’s administration of lethal injections, however, Arthur’s complaint and supporting affidavits are sufficiently different from the complaint filed in both cases to survive dismissal at the pleadings stage. In particular, Arthur’s complaint is supported by the affidavits of two expert witnesses who had reviewed the testimony of Alabama’s expert witness and were prepared to rebut that testimony. Both experts were prepared to testify about specific defects in Alabama’s admin *1262 istration of its execution protocol, including deficiencies and irregularities in Alabama’s procedure to determine whether an inmate is conscious before injecting the second chemical in its three-drug execution procedure. Moreover, at least one of these experts is prepared to present his conclusions drawn from reviewing eyewitness accounts of the execution of Eddie Powell. Because Eddie Powell and Jason Williams were the first Alabama inmates to be executed using pentobarbital instead of sodium thiopental, Arthur’s complaint marks the first time that an Alabama death-row inmate has been able to challenge Alabama’s lethal injection procedure using evidence of how pentobarbital is actually administered in Alabama. In contrast, the plaintiffs expert in both Powell and Powell (Williams) was unable to rely on any evidence of how Alabama actually administers its execution protocol; in fact, the expert’s testimony in both of those cases was drawn from observations of executions conducted in Oklahoma rather than in Alabama, and contained no criticism or objection to the manner in which Alabama administers lethal injections or to any expert testimony set out by Alabama in defense of its executions.[5]
These significant differences between the factual allegations and supporting affidavits in this case, which we must assume to be true at the motion to dismiss stage, render Arthur’s case distinct from the facts and circumstances addressed in our previous decisions. See Anders, 346 F.3d at 1031. Accordingly, the district court committed reversible error in dismissing Arthur’s Eighth Amendment claim without any opportunity for factual development, including discovery between the parties.

B. Equal Protection Violation

Arthur next alleges that Alabama’s material deviation from its lethal injection protocol, namely that it did not conduct the pinch test for consciousness in the execution of Eddie Powell, violates his right to Equal Protection under the Fourteenth Amendment, by burdening his right to be free from cruel and unusual punishment. The district court dismissed this claim as too speculative.
To state an Equal Protection claim, Arthur first has to “show that the State will treat him disparately from other similarly situated persons,” DeYoung, 646 F.3d at 1327. Second, “[i]f a law treats individuals differently on the basis of ... [a] suspect classification, or if the law impinges on a fundamental right, it is subject to strict scrutiny.” Leib v. Hillsborough County Pub. Transp. Comm’n, 558 F.3d 1301, 1306 (11th Cir.2009). Otherwise, Arthur must “must show that the disparate treatment is not rationally related to a legitimate government interest.” DeYoung, 646 F.3d at 1327-28.
*1263 To survive a motion to dismiss, Arthur has to plead “only enough facts to state a claim to relief that is plausible on its face.” Bell Atlantic v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). Here, Arthur has alleged enough facts to constitute a plausible Equal Protection claim because he alleges that Alabama has substantially deviated from its execution protocol in a manner that significantly reduces inmate safeguards. He alleges that Alabama’s lethal injection protocol requires pinching the inmate as the last consciousness check[6] after the initial injection of pentobarbital and prior to injecting the final two lethal drugs. The consciousness check is performed to reduce or eliminate the risk of excruciating pain that would follow the injection of the second and third drugs in the lethal injection protocol. Arthur alleges that based on eyewitness testimony, the State of Alabama failed to perform the pinch test during the 2011 execution of Eddie Powell, even though Powell’s eyes remained open, his head turned from side to side, and he clenched his jaws.
Arthur alleges that Alabama’s reduction in safeguards burdens his right to be free from cruel and unusual punishment. “[Subjecting individuals to a risk of future harm—not simply actually inflicting pain — can qualify as cruel and unusual punishment.” Baze v. Rees, 553 U.S. 35, 49, 128 S.Ct. 1520, 170 L.Ed.2d 420 (2008). Significant deviations from a protocol that protects inmates from cruel and unusual punishment can violate the Eighth Amendment. Indeed, the Sixth Circuit recently affirmed an order to stay an execution because four core deviations from Ohio’s lethal injection protocol, including foregoing mandated vein assessments, burdened the Equal Protection rights of inmates in Ohio. See In re Ohio Execution Protocol Litigation, No. 12-3035, 2012 WL 118322 (6th Cir. Jan. 13, 2012), affirming, Cooey v. Kasich, 801 F.Supp.2d 623, 643-644 (S.D.Ohio 2011) (“We agree with the district court that the State should do what it agreed to do: in other words it should adhere to the execution protocol it adopted.”).
Here, Arthur alleges that Alabama failed to perform a required consciousness check in a recent execution, a significant deviation from its execution protocol. In light of Arthur’s other allegations regarding the veil of secrecy that surrounds Alabama’s execution protocol, it is certainly not speculative and indeed plausible that Alabama will disparately treat Arthur because the protocol is not certain and could be unexpectedly changed for his execution.[7]
Accordingly, accepting Arthur’s allegations as we must at the motion to dismiss stage, we conclude that the district court erred in dismissing Arthur’s Equal Protection claim at this stage of the proceedings and remand for further factual development.[8]
*1264 REVERSED and REMANDED WITH INSTRUCTIONS.

. This is not Arthur’s first appeal with our Court. The factual and procedural history of his challenges to his conviction and death sentence in the federal courts is recounted in our prior decisions. See Arthur v. Allen, 452 F.3d 1234 (11th Cir.), modified on reh’g, 459 F.3d 1310 (11th Cir.2006); Arthur v. Allen, 248 Fed.Appx. 128 (11th Cir.2007); Arthur v. King, 500 F.3d 1335 (11th Cir.2007); Arthur v. Ala. Dept. of Corr., 285 Fed.Appx. 705 (11th Cir.2008).

. Arthur first became subject to lethal injection as a method of execution in Alabama in July 2002. Arthur initiated this action in June, 2011, two months after Alabama announced that it would be substituting pentobarbital for sodium thiopental in its three-drug lethal injection procedure.

. The dissent asserts that "the interpretation and application of a statute of limitations is a question of law.” However, that our review of the district court’s application of a statute of limitations is de novo, is a distinct question from whether a particular statute of limitations involves questions of fact that the district court must determine in the first instance. See e.g., Kearse v. Sec'y, Fla. Dep’t of Corr., 669 F.3d 1197 (11th Cir.2011) (remanding to the district court to determine in the first instance whether federal habeas petitioner’s state petition was "properly filed” in order to satisfy the one-year statute of limitations for filing a federal habeas petition under 28 U.S.C. § 2244(d)(2)); Tello v. Dean Witter Reynolds, Inc., 410 F.3d 1275 (11th Cir.2005) (remanding to the district court for the factual development of the question of "inquiry notice” necessary to the resolution of the statute of limitations question in securities fraud action).

. Similarly, our conclusion in Valle that the plaintiff there had not shown a "substantial likelihood of success on the merits” after an evidentiary hearing on his claim that Florida’s administration of lethal injections violated the Eighth Amendment has no bearing on the factual question of whether a substantial change has occurred in Alabama’s implementation of its execution procedures. 655 F.3d at 1225.

. Alabama claims that a footnote in the district court's opinion referring to Arthur's eyewitness and expert affidavits are sufficient to provide the factual development that we have relied upon in our previous cases. However, Alabama's contention is meritless because none of the district court’s remarks in the footnote come close to resembling a finding of fact about, for example, the credibility of Arthur’s witnesses to the Powell execution, or the persuasiveness of the analysis presented by Arthur's experts in contrast to the analysis presented by Alabama. Nor does the footnote make any findings as to whether, as both of Arthur’s experts describe in their reports, and as one of Arthur's supportive eyewitness affidavits testifies, the individuals conducting the execution failed to administer a "pinch test” in order to determine whether Eddie Powell was insensate before injecting the second and third drugs. Thus, we cannot agree with Alabama’s contention that this footnote provides sufficient factual development to stand in lieu of discovery and a hearing on Arthur's evidence.

. As alleged, Alabama assesses an inmate’s consciousness through graded stimuli, first calling the inmate's name, then stroking the inmate’s eyelids and finally pinching the inmate's arm.

. Arthur argues that it is necessary for his Equal Protection and Due Process claims that Alabama make available a copy of its written execution protocol. We leave it to the district court to determine if production of Alabama's written execution protocol is necessary to resolve Arthur's claims.

. In order to give the district court the opportunity to conduct any additional proceedings prior to Arthur's presently scheduled execution date of March 29, 2012, we are returning jurisdiction of this matter to the district court forthwith with instructions to conduct any additional proceedings, including an evidentiary hearing, as the district court deems necessary.