[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 18-10636
Non-Argument Calendar
_____

D.C. Docket No. 2:17-cv-02083-KOB


DOYLE LEE HAMM,

                                        Plaintiff - Appellant,

versus

COMMISSIONER, ALABAMA DEPARTMENT OF CORRECTIONS,
WARDEN HOLMAN CF,
WARDEN DONALDSON CF,

                                        Defendants - Appellees.

_____

Appeal from the United States District Court
for the Northern District of Alabama
_____

(February 22, 2018)

Before TJOFLAT, JORDAN, and ROSENBAUM, Circuit Judges.

PER CURIAM:

**I.**

Appellant Doyle Lee Hamm is an Alabama death-row inmate scheduled to be executed on February 22, 2018. He appeals a February 20, 2018, order by the United States District Court for the Northern District of Alabama denying his request for an injunction against the Alabama Department of Corrections and the Alabama Attorney General's office (collectively, "Appellees").

In December of 2017, Hamm filed suit against Appellees under 28 U.S.C. § 1983, alleging that executing him by intravenous lethal injection would amount to cruel and unusual punishment as applied to him. Lethal injection in Alabama typically is carried out through an intravenous injection by one of two methods: "peripheral venous access," which involves the "insertion of a catheter into one of the peripheral veins in the arms, hands, legs, or feet"; or "central line placement," which involves the "insertion of a catheter into the jugular vein in the neck, the subclavian vein near the clavicle, or the femoral vein in the groin." Dist. Ct. Order, Feb. 6, 2018 at 6.

Hamm alleges in his complaint that he suffers from lymphoma (a type of blood cancer) and lymphadenopathy (enlarged lymph nodes), which, combined with years of intravenous drug use, have rendered his veins inaccessible for the use of a catheter without a complicated procedure carrying the risk of "a bloody and excruciating experience." Hamm's lawsuit asserts that an injection involving

2

either peripheral or central line access would cause him significant pain and suffering. Based on this assertion, Hamm sought from the district court an injunction preventing Appellees from executing him via intravenous injection. He proposed instead that they execute him by pumping a lethal drug cocktail into his stomach through a nasogastric tube.[1] The injunction Hamm seeks would not prohibit Appellees from executing him altogether but would enjoin them from doing so according to their usual intravenous method.

On February 13, 2018, we vacated a stay of execution granted by the district court because that court had not made sufficient findings showing a substantial likelihood that Hamm would succeed on the merits of his case. We observed that the record as it then stood lacked sufficient evidence on the matter, but we noted that this was because Appellees had to that point restricted Hamm's access to a full medical examination. We directed the district court to order a full medical examination of Hamm immediately and to make findings on the record accordingly.

On February 15, 2018, with counsel for both parties present, an independent

---

[1] Alabama provides capital defendants the opportunity to request electrocution as an alternative method of execution. But a defendant waives this opportunity if he does not request electrocution within thirty days of the Alabama Supreme Court's decision to set an execution date. The district court previously found that Hamm did not make a request within the thirty-day timeframe, so he waived the chance to seek electrocution as an alternative method of execution.

3

medical examiner conducted an examination of Hamm.[2]  The examiner spoke with the district judge orally following the exam.

The following day, February 16, the district court held a hearing concerning whether the examiner's findings established a substantial likelihood that Hamm would succeed on the merits of his case.  The district judge heard arguments from both sides and made some tentative factual findings based on her oral conversation with the medical examiner.  Based on the examiner's finding that accessing veins in Hamm's arms would pose difficulties, the judge asked Appellees' counsel on the record whether they would stipulate to not administer Hamm's lethal injection via veins in his arms.  Appellees agreed, though they took the position that the stipulation would in no way restrict them from using central line placement as an alternative to peripheral venous access in accordance with their protocol.   The judge did not make any rulings from the bench, noting that she would issue a written order once the medical examiner submitted a written report to the court.

The medical examiner issued that report on February 19, 2018.  It included a number of specific findings pertaining to the status of Hamm's veins.  The report summarized its findings as follows:

> In summary, Mr. Hamm has accessible peripheral

---

[2] The identity of the court-appointed medical examiner is known to this court, both parties, and their respective counsel.  But in order to secure the availability of an independent examiner, the district court conducted all proceedings involving the examiner under seal, and all documents identifying the examiner are likewise sealed.

veins in the following regions.

    1. Right great saphenous vein below the level of the knee. The vein is palpable from the medial aspect of the right knee to the anterior portion of the medial malleolus.

    2. Left great saphenous vein below the level of the knee. The vein is palpable from the medial aspect of the left knee to the anterior portion of the medial malleolus.

    3. Right and left internal jugular veins as well as the right and left subclavian veins and the right and left femoral veins. Access of these veins would require ultrasound guidance to perform and an advanced level practitioner would be required. (CRNA, PA or M.D.) [*sic*]

    4. There are no veins in either the left or right upper extremities which would be readily accessible for venous access without difficulty.

    5. Given the accessibility of the peripheral veins listed above, it is my medical opinion that cannulation of the central veins will not be necessary to obtain venous access.

Med. Exam'r Report at 14.

    The district court issued its order on February 20, 2018. The order summarizes many of the medical examiner's findings, but in doing so it misstates certain key facts from the medical examiner's report. In particular, the order states that the medical examiner's report "determines that the veins in Mr. Hamm's upper extremities would be accessible only by an advanced practitioner, such as a CRNA, PA, or MD, using an ultrasound." Dist. Ct. Slip Op. at 5. The report,

however, says that Hamm's central veins (jugular, subclavian, and femoral)—not his peripheral arm veins—would require ultrasound and an advanced practitioner to access. *See* Med. Exam'r Report at 14. The order also says that the written report "determines that Mr. Hamm has accessible and usable veins in his upper and lower extremities." Dist. Ct. Slip Op. at 5. But the report, as noted above, concluded "[t]here are no veins in either the left or right upper extremities which would be readily accessible for venous access without difficulty." Med. Exam'r Report at 14.[3]

All of that notwithstanding, the district court expressly adopted the medical examiner's written report. Dist. Ct. Slip Op. at 5. Then the district court found as follows:

> [B]ased on the independent medical examiner's report about Mr. Hamm's venous access and lack of lymphadenopathy, and based on Defendants' stipulation that they will not attempt peripheral venous access in Mr. Hamm's upper extremities, the court finds that Mr. Hamm has adequate peripheral *and* central venous access for intravenous lethal injection of a large amount of fluid. He cannot show any medical factors that would make the Alabama lethal injection protocol, as applied to him, more likely to violate the Eighth Amendment than it would for any other inmate who would be executed following that protocol.

---

[3] We appreciate the district court's enormous efforts to ensure that the directives from our February 13, 2018, order were complied with and can understand how the district court could have mis-cited the report in light of the immense time pressure under which it was acting. The medical report does note in its body that certain specific veins in Hamm's upper extremities "were of adequate size but would be very difficult to access without the use of ultrasound."

*Id.* at 6 (emphasis in the original). The court concluded that Hamm "cannot show a substantial likelihood of success on the merits of his as-applied claim," and that "he cannot show that he will suffer irreparable injury without a preliminary injunction." Accordingly, the court denied his "request for a preliminary injunction."

Hamm then filed a motion for reconsideration, which the district court denied. In doing so, the court emphasized, among other things, that the medical examiner "opined that in light of the accessible peripheral veins in Mr. Hamm's lower extremities, 'cannulation of the central veins will not be necessary to obtain venous access.'" Dist. Ct. Order Den. Recons. at 2.

Following Hamm's appeal of the district court's order denying preliminary injunction and because of the exigencies of the situation and the inability to conduct oral argument, we directed Appellees to clarify a few matters by submitting an affidavit. The affidavit, executed by the Warden of Holman Correctional Facility (where Hamm's execution is scheduled to take place), attested that Appellees will achieve peripheral vein access through Hamm's lower extremities only, that Appellees are capable of administering an IV line through Hamm's veins in his lower extremities, and that Appellees will have ultrasound technology and an M.D. present during Hamm's execution.

## II.

We may reverse an order denying a preliminary injunction "only if there was a *clear* abuse of discretion." *Siegel v. LePore*, 234 F.3d 1163, 1175 (11th Cir. 2000) (en banc) (emphasis in the original). Reversal is warranted "only if the district court applies an incorrect legal standard, or applies improper procedures, or relies on clearly erroneous factfinding, or if it reaches a conclusion that is clearly unreasonable or incorrect." *Forsyth Cty. v. U.S. Army Corps of Eng'rs*, 633 F.3d 1032, 1039 (11th Cir. 2011) (quoting *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223, 1226 (11th Cir. 2005)).[4]

A party seeking a preliminary injunction must show "(1) it has a substantial likelihood of success on the merits; (2) irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest." *Siegel*, 234 F.3d at

---

[4] Hamm's amended complaint seeks, among other forms of relief, "injunctive relief" to prevent Appellees "from proceeding with the execution of Mr. Hamm by an intravenous lethal injection" and "from planning or threatening Mr. Hamm with intravenous lethal injection by excessively drawing blood or in any other way continuing to pursue intravenous lethal injection." Am. Compl. at 44. The district court interpreted this to mean a preliminary injunction, as opposed to a permanent injunction, and analyzed whether Hamm had met all the requirements necessary to show that a preliminary injunction is warranted. Neither party has challenged this interpretation on appeal. We nevertheless observe that the outcome of this case would be the same even if analyzed under the rubric of a permanent injunction. And because the legal standards are the same for a preliminary injunction and for a stay, the outcome would be no different if this were a motion for a stay of execution. *See Grayson v. Warden, Comm'r, Ala. DOC*, 869 F.3d 1204, 1239 n.90 (11th Cir. 2017) (observing that "[t]he same four-part test applies when a party seeks a preliminary injunction" and a stay of execution).

1176. A preliminary injunction "is an extraordinary and drastic remedy not to be granted unless the movant clearly establishes the burden of persuasion as to each of the four prerequisites." *Id.* (quoting *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1306 (11th Cir. 1998)) (internal quotation marks omitted).

The merits of Hamm's Eighth Amendment claim consist of two parts. First, Hamm must show "that the method presents a risk that is sure or very likely to cause serious illness and needless suffering, and give rise to sufficiently imminent dangers." *Glossip v. Gross*, 135 S. Ct. 2726, 2737 (2015) (quoting *Baze v. Rees*, 553 U.S. 35, 50 (2008)) (italics and internal quotation marks omitted). Second, he must "identify an alternative [method] that is feasible, readily implemented, and in fact significantly reduce[s] a substantial risk of severe pain." *Id.* (internal quotation marks omitted).

## III.

The district court concluded that Hamm could show neither a likelihood of success on the merits nor irreparable injury in light of the independent medical examiner's findings. On appeal, Hamm argues the district court abused its discretion in reaching these conclusions for three main reasons. We consider each of them in turn.

First, Hamm argues that despite the district court's findings, he is still able to show a significant likelihood of success on the merits. He points to a number of

findings in the medical examiner's report, which the district court adopted, that include the following:

- No veins in either of his arms "would be readily accessible for venous access without difficulty";

- Only two peripheral veins in his legs (one in each leg) were identified as readily accessible, leaving no margin for error since Alabama's lethal injection protocol requires two separate IVs;

- Both of Hamm's legs are "hyperpigmented consistent with venous stasis";[5]

- Both of the accessible veins in Hamm's legs have "venous valvular insufficiency";[6]

- Two lymph nodes were found in Hamm's right groin, though they "do not impede venous flow";

- Venous access through central line placement would require "ultrasound guidance" and "an advanced level practitioner . . . (CRNA, PA or M.D.)."

Appellant Br. at 11.    All of these together, Hamm says, create a significant likelihood that he will succeed in showing Alabama's protocol of execution by

---

[5] In his brief, Hamm notes that "[v]enous stasis keeps blood from moving well in the veins and causes leakage from the veins into the skin."

[6] In his brief, Hamm says that venous valvular insufficiency "causes blood flow back and causes blood to pool or collect in the veins."

10

intravenous lethal injection is unconstitutional as applied to him.

But our inquiry is only whether the district court abused its discretion in deciding otherwise. We conclude it did not. The district court adopted the independent medical examiner's determination that Hamm has two accessible peripheral veins, one in each leg, and concluded that despite the observations recounted by Hamm above, Appellees would be able to administer an intravenous lethal injection through these two veins without significant risk of pain and suffering to Hamm. We can find no clear error in this finding. And because Appellees stipulated that they would attempt to perform the execution through the use of the leg veins, the district court's ruling that Hamm could not show a significant likelihood of success on the merits of his Eighth Amendment challenge was within the district court's discretion on the record here.

As for Appellees' ability to access Hamm's central veins, the medical report (which the district court accepted) states, "Access of [the central veins] would require ultrasound guidance to perform and an advanced level practitioner would be required. (CRNA, PA, or M.D.)." Here, Appellees have stipulated via an affidavit to this court that they will have ultrasound technology and an M.D. present during Hamm's execution. And in any event, nothing in the record allows us to conclude that the district court erred when it declined to find that performing the execution through central-vein access would violate Hamm's Eighth

11

Amendment rights.

Second, Hamm argues that the district court (1) improperly devised a new lethal-injection protocol and (2) refused to let him put on evidence as to whether this protocol is constitutional.

Beginning with the first of these, Hamm contends that the district court "created and required the state to apply a 'legs only lethal injection,'" a new protocol he says the court was prohibited from imposing. To support this argument, Hamm points to *Arthur v. Thomas*, 674 F.3d 1257, 1263 (11th Cir. 2012), in which we observed that "[s]ignificant deviations from a protocol that protects inmates from cruel and unusual punishment can violate the Eighth Amendment."

We conclude the district court did not abuse its discretion in authorizing this method of execution. True, *Arthur* does warn against "[s]ignificant deviations" from a lethal injection protocol. But the plaintiff in that case had alleged that the state had failed to follow through with "a required consciousness check" in a recent execution. *Id.* at 1263. So we said that the plausible Eighth Amendment violation was not just any deviation from protocol, but a deviation "from a protocol that protects inmates from cruel and unusual punishment." *Id.* And we observed that such a deviation "can" run afoul of the Eighth Amendment—not that it necessarily will. *See id.*

12

But here, lethal injection is already Alabama's method of execution. Alabama's lethal-injection protocol does not specify where exactly IVs are supposed to be placed. So the "deviation" (legs versus arms) appears to be a deviation only from Alabama's usual custom, not from its official protocol. Moreover, the procedure the district court approved *is* the protocol designed to protect Hamm from cruel and unusual punishment given the fragile state of his arm veins. Though Hamm asserts that Appellees have never before performed an intravenous lethal injection via the legs, the district court adopted the independent medical examiner's findings that Hamm's great saphenous veins would be accessible without issue. The district court was within its discretion to conclude that authorizing a lethal injection via Hamm's legs would not present a constitutionally prohibited risk of pain and suffering.[7]

Hamm also invokes *Nelson v. Campbell*, 541 U.S. 637 (2004), a case involving an Alabama death-row inmate's challenge to a change in execution protocol implemented days before his scheduled execution. Hamm contends that there, the Supreme Court rejected Alabama's attempt to use central venous access on Nelson "in large part based on the problematic deviation from the normal protocol." Appellant Br. at 25. But that mischaracterizes *Nelson*. The Court in *Nelson* held only that Nelson could bring a § 1983 action to challenge Alabama's

---

[7] Appellees have also attested via affidavit that people capable of accessing the leg veins will participate in the execution.

decision to use a so-called "cut-down" procedure to gain central line access for his lethal injection. *Nelson*, 541 U.S. at 645-46. Plus, the Court noted that in that case, state officials rolled back a number of safeguards and withdrew a number of assurances they had made about the execution process shortly before the execution was scheduled to take place. *Id.* at 641. But as we have explained, the procedure approved by the district court here does not roll back any safeguards. Rather, it ensures to the extent possible that Hamm will not experience excess pain and suffering in the course of his execution.

Hamm also takes issue with the district court's refusal to let him put on evidence about whether lethal injection via his legs would violate his Eighth Amendment rights. At the hearing held on Friday, February 16, 2018, after the district court stated on the record that the medical examiner found Hamm's great saphenous veins to be accessible, Hamm's counsel asked the court for the opportunity to elicit testimony from several witnesses about the executioners' qualifications and experience relevant to administering lethal injections through the legs. Those witnesses included the Commissioner of the Alabama Department of Corrections, the Warden of Holman Correctional Facility, and a former Warden of Holman who had previously administered a number of lethal injections. All of them were present in the courtroom for the hearing. The district court denied counsel's request, explaining that the evidence he sought to put on would

14

essentially go to whether Alabama's lethal injection protocol is constitutional on its face, as opposed to whether it is constitutional only as applied to Hamm.

The district court did not abuse its discretion in denying Hamm's request. The testimony Hamm sought to elicit from the various witnesses concerned their experience and training relevant to administering a lethal injection through the legs. Though Alabama has seemingly never administered lethal injections through the leg, it is within its protocol to do so. Testimony on that subject would have been equally relevant to the cases of every death-row inmate, since lethal injection via the legs is something available for Appellees to use under their protocol in any case, not just Hamm's. The district court did not abuse its discretion by finding that the testimony Hamm sought to elicit would have gone to a facial challenge rather than Hamm's as-applied challenge to the protocol.[8]

Third, Hamm contends that even if he has not thus far proffered sufficient evidence to justify an injunction, his failure to do so results from Appellees' "sandbagging." He argues that the rushed and incomplete nature of his challenge arises from the fact that Appellees took six months to turn over his medical records, an additional five months to disclose a redacted version of Alabama's lethal-injection protocol, and an additional month after that to update his medical

---

[8] Appellees also submitted to this court a sworn affidavit—consistent with their stipulation in the district court—asserting that it is within their capability to perform a lethal injection via the legs (and that ultrasound equipment and an M.D. will be present for the execution, regardless).

records.  Appellant Br. at 36-37.  All of this obstruction, says Hamm, left the district court with only three business days to find an independent medical examiner, conduct a full medical examination, and hold a hearing.  *Id.* at 36.

We do not know what accounted for Appellees' delay in turning over the relevant documentation.  And we are troubled by the significant length of the delays.  Nevertheless, on this record, we conclude that the process used by the district court here resulted in a sufficient and neutral set of findings to ensure Hamm will not face a constitutionally impermissible risk of pain and suffering.[9]

## IV.

Finally, Hamm argues the district court erred by denying his request for additional safeguards, such as allowing his counsel to be present during the attempt to gain venous access, a time limit and number limit on attempts to gain venous access, and allowing his counsel to have a cell phone in the viewing room during the execution with which to call the district court.  Hamm argues that "[i]f a new specialized protocol is allowed," these additional measures are warranted under the circumstances of his case to "ensure a constitutional execution."  As we have

---

[9] Hamm also argues that as a result of Appellees' delay, the district court appointed an independent medical examiner not qualified to assess his viability for lethal injection because the examiner was not "an anesthesiologist with regular experience in placing catheters and performing central lines."  Appellant Br. at 40-41.  But at the hearing on February 16, the district court extensively detailed the examiner's credentials and stated, "I am fully satisfied with [the examiner's] credentials, . . . expertise[,] . . . ability to answer the questions that I had concerning Mr. Hamm's general vein condition[,] and . . . ability to render that opinion timely."  Hr'g Tr., Feb. 16, 2018 at 11.  We find no clear error in the district court's ruling.

16

explained, however, this case does not involve a "new specialized protocol." Therefore, as Hamm has framed his additional requests, they are moot.

## V.

We conclude that the district court did not abuse its discretion when it ruled that Hamm cannot show a significant likelihood that execution by intravenous injection would violate his Eighth Amendment rights.[10]  Hamm has two peripheral veins accessible for a lethal injection, and his central veins are likewise accessible for a lethal injection.  Finally, the conditions rendering the central veins accessible in Hamm's case—the availability of ultrasound equipment and an advanced practitioner—exist here.  We therefore affirm the district court's denial of Hamm's motion for a preliminary injunction.

**AFFIRMED.**

---

[10] We need not decide whether the district court abused its discretion in finding no irreparable injury absent an injunction.

17