IN THE UNITED STATES DISTRICT COURT FOR 
 THE MIDDLE DISTRICT OF ALABAMA 
 NORTHERN DIVISION 

WILLIE B. SMITH, III, ) 
 ) 
 Plaintiff, ) 
 ) 
 v. ) Case No. 2:21-cv-99-RAH 
 ) (WO) 
JEFFERSON S. DUNN, et al., ) 
 ) 
 Defendants. ) 

 MEMORANDUM OPINION AND ORDER 
 Plaintiff Willie B. Smith, III (“Smith”) is an Alabama death-row inmate in the 
custody of the Alabama Department of Corrections. On February 2, 2021, Smith 
filed a complaint pursuant to 42 U.S.C. § 1983 against the Commissioner of the 
Alabama Department of Corrections and the Warden of Holman Correctional 
Facility1 (collectively “the ADOC”) in their official capacities.2 Pending before the 
Court is Smith’s Emergency Motion for Stay of Execution (Doc. 3) filed 
contemporaneously with Smith’s Complaint. In his motion, Smith argues that he is 
entitled to a stay of his execution, presently scheduled for February 11, 2021, 

1 Holman is the primary correctional facility for housing death row inmates in Alabama and is the 
only facility in the state that carries out executions. 
2 Smith currently has two other § 1983 lawsuits pending: Smith v. Dunn, Case No. 21-10348 (11th 
Cir. 2021), on appeal from the Middle District of Alabama, Case No. 2:20-cv-1026-RAH, and 
Smith v. Dunn, Case No. 2:19-cv-927-ECM (M.D. Ala.). 
because the ADOC has implemented a protocol for his execution that will violate 
his constitutional rights. The ADOC filed an objection to Smith’s motion on 

February 5, 2021. (Doc. 14.)3 On February 7, 2021, Smith filed his reply (Doc. 15) 
and the court heard oral argument on the pending motions the next day. 
Accordingly, this matter is ripe for review. For the reasons that follow, Smith’s 

motion for a stay of his execution is due to be DENIED. 
 I. FACTUAL AND PROCEDURAL HISTORY 
 On January 27, 2021, Smith filed a motion for a stay of execution in the 
Alabama Supreme Court.4 Therein, Smith argued that his execution should be 

rescheduled to prevent the spread of COVID-19. Smith raised concerns about 
witnesses and visitors who would be traveling to Alabama from across the country 
during the week of his execution and noted that the ADOC had no measures in place 

to test for COVID-19 or otherwise protect visitors and staff. His execution, Smith 
argued, had all the makings of a “super-spreader event.” (Doc. 14-1, p. 1.)5 

3 Along with its objection, the ADOC also filed a Motion to Dismiss. (Doc. 14.) As of the date of 
this order, that motion remains pending. 

4 Ex parte Smith, No. 1011228 (Ala. Jan. 27, 2021); Doc 14-1. 
5 Citations to page numbers in documents filed in this case will be to the page number generated 
by the court’s CM/ECF system. 
 The ADOC’s response to Smith’s motion included a document outlining the 
measures the ADOC plans to implement to minimize the risks associated with 

COVID-19, including mandatory COVID-19 testing, rules for social distancing, 
personal protective equipment (“PPE”) requirements, and limitations on the number 
of witnesses who would be permitted to attend Smith’s execution.6 The Alabama 

Supreme Court denied Smith’s motion on February 1, 2021.7 
 The following day, Smith filed the instant action alleging that the ADOC’s 
changes to its standard protocol will violate Smith’s right to equal protection to be 
free from cruel and unusual punishment, will force Smith to choose between his 

constitutional rights to counsel, access to the courts, marriage, and free exercise of 
religion, and will violate Smith’s due process rights. (See Doc. 1.) 
 Following a status conference with the court, the ADOC filed a report 

(Doc. 9) in which it agreed to alter its COVID-19 measures to allow Smith contact 
visitation during the week preceding his execution and to choose up to three 
witnesses to attend the execution. This report also addressed several ambiguities 
within the amended protocol, including a clarification that Smith will not be required 

to wear a face mask or a face shield during the execution procedure. Smith filed a 

6 The ADOC’s initial COVID-19 measures permitted Smith to choose only one witness to attend 
his execution. 

7 Ex parte Smith, No. 1011228 (Ala. Feb. 1, 2021). 
response (Doc. 11) to the ADOC’s report which indicated that several aspects of 
Smith’s claims had been mooted, including the concerns that Smith might be 

required to wear PPE during his execution procedure and concerns that Smith would 
have to choose among his attorneys, his pastor, and his family when selecting the 
single witness permitted to attend his execution. (See Doc. 11.) 

 During oral argument on the emergency motion to stay, counsel for Smith 
further narrowed the issues still in dispute, conceding that only one colorable claim 
remains at the present moment.8 Smith argues that the ADOC’s amended COVID-
19 measures will subject Smith to cruel and unusual punishment by requiring 

members of the execution team to wear both a mask and a clear face shield during 
Smith’s execution. Smith says this will prevent the officer conducting the 
consciousness check9 from properly assessing whether or not Smith is sedated before 

proceeding with the execution. (Doc. 11, pp. 1-3.) 

8 While Smith places emphasis on the consciousness check, his attorney expressed continuing 
concern with the ADOC’s COVID-19 measures in the event one or more of Smith’s witnesses is 
denied entry into Holman after presenting with a fever at or above 100.4 degrees or testing positive 
for COVID-19. Recognizing that those concerns are speculative, counsel acknowledged that the 
prudent action for the court is to withhold ruling on the ADOC’s motion to dismiss and instead 
keep the motion active in case any of these theoretical possibilities become actual issues on the 
day of Smith’s execution. 

9 Smith is scheduled to be executed using Alabama’s three-drug lethal injection protocol. This 
protocol involves administering an initial dose of midazolam, a sedative, followed by a three-step 
“consciousness check” to ensure an inmate is sedated before the remaining two drugs, a paralytic 
and a lethal dose of potassium chloride, are administered. (Doc. 1, p. 19.) If the inmate responds 
to the consciousness check, another dose of midazolam is administered, and the consciousness 
check is performed a second time. 
 Because Smith has acknowledged that all other aspects of his claims have 
been mooted, it is on the basis of this narrowed claim articulated at oral argument 

that Smith moves to stay his execution. 
 II. JURISDICTION AND VENUE 
 The Court has original subject matter jurisdiction of this case pursuant to 28 
U.S.C. §§ 1331 and 1343(a)(3). Personal jurisdiction and venue are uncontested, 

and the Court concludes that venue properly lies in the Middle District of Alabama. 
See 28 U.S.C. § 1391. 
 III. STANDARD OF REVIEW 
 While a death row inmate may challenge the constitutionality of his execution 

through a civil action, a stay “is not available as a matter of right,” even if execution 
is imminent. Hill v. McDonough, 547 U.S. 573, 584 (2006). Rather, “a stay of 
execution is an equitable remedy,” and “equity must be sensitive to the State’s strong 
interest in enforcing its criminal judgments without undue interference from the 

federal courts.” Id.; cf. Thompson v. Wainwright, 714 F.2d 1495, 1506 (11th Cir. 
1983) (“Each delay, for its span, is a commutation of a death sentence to one of 
imprisonment.”). Both the State and the victims of crime “have an important interest 

in the timely enforcement of a sentence.” Hill, 547 U.S. at 584. 
 The standard for granting a stay of execution to a death row inmate is the same 
as that for granting a temporary restraining order or preliminary injunction. A “death 
row inmate is afforded no preferential treatment by his filing of a motion to stay, and 
all requirements for a stay must be satisfied.” Powell v. Thomas, 784 F. Supp. 2d 

1270, 1273 (M.D. Ala. 2011), aff’d, 641 F.3d 1255 (11th Cir. 2011). A federal court 
may issue a stay of execution only if the inmate demonstrates each of the following 
elements: (1) he has a substantial likelihood of success on the merits; (2) he will 

suffer irreparable injury unless the stay issues; (3) the threatened injury outweighs 
the harm the stay would cause the other litigant; and (4) if issued, the stay would not 
be adverse to the public interest. Chavez v. Florida SP Warden, 742 F.3d 1267, 1271 
(11th Cir. 2014); see also Powell v. Thomas, 641 F.3d 1255, 1257 (11th Cir. 2011). 

The inmate must, “by a clear showing,” carry the burden of persuasion on all four 
requirements. Hill, 547 U.S. at 584; Mazurek v. Armstrong, 520 U.S. 968, 972 (1997) 
(per curiam). 

 IV. DISCUSSION 
A. Substantial Likelihood of Success on the Merits 
 Smith is only entitled to a stay of his execution if he carries the burden of 
persuasion on all four requirements, the first of which is a substantial likelihood of 

success on the merits of his remaining claim. Chavez, 742 F.3d at 1271. As counsel 
for Smith acknowledged during oral argument, Smith’s remaining claim involves 
speculative questions of “what if.” The potential constitutional deprivations alleged 

here depend on an execution team officer failing to properly perform a consciousness 
check during Smith’s execution in the event, for example, an overhead light creates 
a glare on the officer’s face shield, obscuring his view of Smith. But Smith has not 

presented the court with facts or evidence to substantiate his concerns. 
 Smith alleges that his equal protection10 right to be free from cruel and unusual 
punishment will be violated if members of the execution team are required to wear 

PPE, specifically both a face mask and a clear face shield, during his execution 
because the officer performing the consciousness check may not be able to 
effectively determine whether Smith remains conscious after the initial dose of 
midazolam is administered. (Doc. 11, pp. 1-3.) 

 The ADOC’s report clarifying the COVID-19 measures to be implemented 
during Smith’s execution provides that if the correctional officer performing the 
consciousness check “believes his assessment of the inmate or his ability to 

communicate is being obstructed by his own PPE, then he may remove his shield 
and/or mask for the time necessary.” (Doc. 9, p. 2.) Smith urges that leaving the 
decision of whether to remove PPE to an officer’s sole discretion leaves open the 
possibility that Smith’s execution may move forward even if Smith is conscious 

10 Smith contends he is similarly situated with all other inmates who have been executed or are 
subject to execution in Alabama. The court does not, at this time, address the question of whether 
Smith has properly pled an equal protection claim where he has not identified a comparator who 
has been or is scheduled to be executed in Alabama while COVID-19 measures are in place. See 
Price v. Comm'r, Dep't of Corr., 920 F.3d 1317, 1325 (11th Cir. 2019), cert. denied sub nom. Price 
v. Dunn, 139 S. Ct. 1542 (2019) (mem) (holding that an inmate subject to execution under 
Alabama’s lethal injection protocol was not similarly situated to inmates who elected Alabama’s 
alternative nitrogen hypoxia method of execution). 
because “it will be impossible for the officer . . . to determine if a lack of response 
to stimuli is because the prisoner is no longer sensate or because the stimuli has been 

obstructed by the officer’s PPE.” (Doc. 11, p. 2.) 
 The ADOC argues that Smith’s allegation is unsupported by fact. (Doc. 14, p. 
12.) Instead, the ADOC notes, the correctional officer who will conduct the 

consciousness check is a member of the prison’s trained execution team and is 
educated with regard to what signs to look for in determining whether Smith is 
conscious. (Id.) The ADOC further argues that PPE has been used in “general life” 
for nearly one year and the correctional officer will not only be aware of any 

limitations the PPE might impose upon him, but will be in the “best position to 
determine whether some or part of his PPE needs to be removed for him to perform 
his duty . . . .” (Doc. 14, p. 11.) 

 Nothing in the parties’ briefs or the evidence before the court appears to 
indicate that the officer performing Smith’s consciousness check will not conduct a 
constitutionally-sound assessment. The first step of the consciousness check requires 
the officer to call out Smith’s name in a loud voice (Doc. 1, p. 19) while leaning over 

Smith as he lies strapped to a gurney. Smith worries that a mask and face shield11 
might muffle the sound of the officer’s voice, making it unclear if a lack of response 

11 The same type of masks and face shields are used every day by medical professionals in their 
dealings with patients. 
on Smith’s part is because Smith is adequately sedated or simply because he did not 
hear the auditory stimulus. 

 The consciousness check performed under Alabama’s execution protocol 
calls for graded stimuli, beginning with the auditory stimulus, followed by the officer 
brushing the inmate’s eyelashes with his finger and then pinching the skin of the 

inmate’s upper back. (Doc. 14, pp. 9-10.) Consequently, should there be any issue 
with the initial auditory stimulus—an issue which, again, is supported only by 
counsel’s argument based on hypothetical scenarios—there remain two additional 
physical stimuli that will assess Smith’s consciousness before the remaining lethal 

injection drugs are introduced. 
 Smith also expresses concerns, however, regarding steps two and three of the 
consciousness check. The wearing of a face shield, Smith argues, could create a glare 

obscuring the officer’s vision, which, in turn, may prevent the officer from seeing 
small movements that might indicate Smith is still sensate. The ADOC’s amended 
COVID-19 measures address Smith’s concerns by permitting the officer performing 
the consciousness check to remove his PPE in the event his mask or face shield 

prevents him from sufficiently performing his duties. The court has no reason to 
disagree that as a member of the trained execution team, this officer is 
knowledgeable with regard to the signs of consciousness and will know whether his 

ability to observe those signs is impeded by his PPE. Any concern that this officer 
will not perform a constitutionally-adequate consciousness check is purely 
speculative at this time. 

 Moreover, Smith’s claim does not rise to the level necessary to satisfy the 
United States Supreme Court’s high standard to constitute cruel and unusual 
punishment. The Court has stated, “simply because an execution method may result 

in pain, either by accident or as an inescapable consequence of death, does not 
establish the sort of ‘objectively intolerable risk of harm’ that qualifies as cruel and 
unusual.” Baze v. Rees, 553 U.S. 24, 50 (2008) (plurality op.). Instead, Smith must 
show the “sufficiently imminent danger” that he is “sure or very likely” to endure 

“needless suffering.” Glossip v. Gross, 576 U.S. 863, 877 (2015) (citations omitted). 
 Smith argues that “significant deviations from a protocol that protects inmates 
from cruel and unusual punishment can violate the Eighth Amendment.” Arthur v. 

Thomas, 674 F.3d 1257, 1263 (11th Cir. 2012). The case on which Smith relies 
arose after the ADOC’s execution team failed to perform the final step of a 
consciousness check during a prior execution. Id. Arthur, a death-row inmate, 
argued that the ADOC may likewise fail to fully perform the required consciousness 

check during his upcoming execution, which might subject him to a cruel and 
unusual death. See id. Because the ADOC had failed to perform the final step of a 
consciousness check during its most recent execution, the Eleventh Circuit held that 

Arthur had sufficiently pled a plausible, non-speculative claim for relief. Id. 
 Unlike the plaintiff in Arthur, Smith has not provided evidence that the ADOC 
will not perform or has not recently performed a satisfactory consciousness check.12 

As Smith noted in his complaint, the ADOC has employed its three-step 
consciousness check during every execution since 2011. (Doc. 1, p. 19.) Smith 
characterizes the PPE requirements as a significant deviation from the ADOC’s 

protocol and speculates that the PPE might interfere with the adequacy of the 
assessment. But the ADOC has represented—and the revised protocol confirms—
that it still intends to perform all three steps of the consciousness check and will 
allow its officer to remove any PPE barriers to ensure the assessment is adequately 

performed. (See Docs. 9, 14.) Smith has not identified sufficiently imminent danger 
that he is sure or very likely to suffer needlessly. See Glossip, 576 U.S. at 877. 
Accordingly, the court finds that Smith is not substantially likely to succeed on the 

merits of any remaining claim. 
B. Remaining Stay Requirements 
 In addition to evaluating Smith’s substantial likelihood of success on the 
merits of his claim, the court must also evaluate the remaining stay requirements: 

whether irreparable injury will be suffered unless a stay issues, whether the 
threatened injury to Smith outweighs whatever damage a stay may cause the ADOC, 

12 Further, the Arthur case was on appeal from a Rule 12(b)(6) dismissal. On a motion to stay, the 
court determines a substantial likelihood of success on the merits of a claim, not simply whether a 
claim has been sufficiently pled. 
and if issued, whether a stay would not be adverse to the public interest. See Chavez, 
742 F.3d at 1271. 

 Smith argues that if this court does not issue a stay, he will suffer irreparable 
injury—namely an unconstitutionally painful death—and will be left with no 
opportunity for redress of his constitutional claims. (Doc. 3.) He further attests there 

would be no injury to the ADOC because the state of Alabama chose to move for 
Smith’s execution during a global pandemic and that the public has no interest in 
carrying out unconstitutional executions. (Id.) Smith also notes that there was no 
undue delay in the timing of his motion as he brought this suit within days of learning 

of the ADOC’s COVID-19 measures. (Id.) 
 The court acknowledges that Smith did not engage in undue delay in filing the 
instant motion, but nonetheless finds that the remaining stay considerations weigh 

in favor of the ADOC. Any argument that Smith will suffer irreparable injury is, 
again, speculative at this time. Smith will only suffer an unconstitutional execution 
if the execution team fails to perform its obligations with regard to the consciousness 
check. As articulated above, though, there is no evidence that the ADOC does not 

intend to conduct a constitutionally-sound consciousness check. Instead, the ADOC 
has implemented measures to ensure that its officers can perform the assessment 
without impediment. 
 The court also recognizes that “[b]oth the State and the victims of crime have 
an important interest in the timely enforcement of a sentence.” Hill, 547 U.S. at 584. 

Therefore, “equity must be sensitive to the State’s strong interest in enforcing its 
criminal judgments without undue interference from the federal courts.” Id. 
 V. CONCLUSION 

 Based on the foregoing reasons, Smith has failed to carry the burden of 
persuasion on the requirements for a stay of his execution. Accordingly, it is 
 ORDERED that Smith’s Emergency Motion for Stay of Execution (Doc. 3) is 
hereby DENIED. 

 DONE and ORDERED this 9th day of February 2021. 

 /s/ R. Austin Huffaker, Jr. 
 R. AUSTIN HUFFAKER, JR. 
 UNITED STATES DISTRICT JUDGE