[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 20-10843
_____

D.C. Docket No. 2:20-cv-00058-ECM

NATHANIEL WOODS,

Plaintiff-Appellant,

versus

COMMISSIONER, ALABAMA DEPARTMENT OF CORRECTIONS,
WARDEN, HOLMAN CORRECTIONAL FACILITY, and
ATTORNEY GENERAL, STATE OF ALABAMA,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Alabama
_____

(March 4, 2020)

Before ED CARNES, Chief Judge, WILLIAM PRYOR and ROSENBAUM,
Circuit Judges.

WILLIAM PRYOR, Circuit Judge:

Nathaniel Woods was convicted and sentenced to death in 2005 for intentionally killing three on-duty police officers. After he finished unsuccessfully challenging his convictions and sentence in state and federal courts, the State moved the Supreme Court of Alabama on October 29, 2019, for an execution date. On January 23, 2020, Woods filed a complaint in the district court challenging the State's planned method of execution as violating his rights under the Eighth and Fourteenth Amendments and Alabama state law. *See* 42 U.S.C. § 1983. On January 30, 2020, the Supreme Court of Alabama scheduled Woods's execution for March 5, 2020. Woods filed a motion in the district court for a stay of execution on February 24. On March 2, the district court ruled in favor of the State and denied Woods's motion for a stay. Woods appealed and moved this Court for a stay of execution. We deny his motion for a stay of execution.

## I. BACKGROUND

A jury convicted Woods in 2005 of capital murder for the intentional killing of three on-duty Birmingham police officers: Carlos Owen, Harley A. Chisolm III, and Charles R. Bennett. The officers, along with Officer Michael Collins, who was wounded, were at an apartment where Woods and his co-defendant, Kerry Spencer, sold drugs and stored guns. The officers were in an area that was known for having drug problems when they encountered Woods, who was shouting profanities at them, and learned that he had an outstanding arrest warrant for

2

assault. The officers were then shot when they attempted to arrest Woods. A jury convicted Woods of four counts of capital murder for his role in the killing of the officers, and the court imposed the death penalty. Woods challenged his convictions and sentence on direct appeal to the Alabama Court of Criminal Appeals, *Woods v. State*, 13 So. 3d 1, 4–9 (Ala. Crim. App. 2007), and the Supreme Court of Alabama, *see Woods v. State*, 221 So. 3d 1125, 1130 (Ala. Crim. App. 2016), and through collateral challenges in state court, *see id.*, and federal court, *Woods v. Holman*, No. 18-14690-P, 2019, at *2 WL 5866719 (11th Cir. Feb. 22, 2019). All have been denied.

Woods is facing execution on March 5, 2020, and is challenging the State's planned method of execution. On January 23, 2020, he filed a civil-rights complaint in the district court, 42 U.S.C. § 1983, against Jefferson Dunn, the Commissioner of the Alabama Department of Corrections; Cynthia Stewart, the Warden of the prison where he is held—Holman Correctional Facility; and Steve Marshall, the Attorney General of Alabama. He brought claims under the Eighth and Fourteenth Amendments and Alabama state law.

The focus of his complaint is a new Alabama law that added nitrogen hypoxia as an alternative execution method to the default method of lethal injection. *See* Ala. Code § 15-18-82. For death-sentenced inmates such as Woods who were sentenced prior to the effective date of the amendment, the State

3

provided for a thirty-day period—from June 1 to June 30, 2018—to elect nitrogen hypoxia as the method of execution. *See id.* § 15-18-82.1(b)(2). The addition of nitrogen hypoxia served to moot a pending challenge to the constitutionality of Alabama's lethal-injection protocol. *See In re: Ala. Lethal Injection Protocol Litig.*, No. 2:12-cv-316-WKW (M.D. Ala. filed Apr. 6, 2012). The plaintiffs in that action were represented by attorneys at the Federal Public Defender's Office, who drafted a form to distribute to clients so they could elect nitrogen hypoxia.

The election form stated as follows:

ELECTION TO BE EXECUTED BY NITROGEN HYPOXIA

Pursuant to Act No. 2018-353, if I am to be executed, I elect that it be by nitrogen hypoxia rather than by lethal injection.

This election is not intended to affect the status of any challenge(s) (current or future) to my conviction(s) or sentence(s), nor waive my right to challenge the constitutionality of any protocol adopted for carrying out execution by nitrogen hypoxia.

Dated this _____ day of June, 2018.

_____          _____
Name/Inmate Number                              Signature

It is undisputed that Woods received this form during the election period but did not complete it. Nearly 50 of the 175 death-sentenced inmates in Alabama elected nitrogen hypoxia during the election period, including inmates like Woods whom the Federal Public Defenders did not represent. *Dunn v. Price*, 139 S. Ct. 1312, 1312 (2019). Although Woods was represented by counsel during the

4

election period, he contends that he did not contact his counsel at that time.

When Alabama added nitrogen hypoxia as an alternative method of execution, it did not, and still does not, have a protocol in place for nitrogen-hypoxia executions. The Alabama Department of Corrections "has been diligently working to formulate a safe hypoxia protocol," but it will not have a protocol in place by March 5. The lack of a protocol has affected the order in which the State has moved for executions. "As a matter of custom, the State waits to move for an inmate's execution until he has exhausted his conventional appeals: direct appeal, state postconviction, and federal habeas." But some of the inmates who have exhausted their conventional appeals elected to be executed by nitrogen hypoxia and so cannot be executed yet. For those inmates like Woods who did not elect nitrogen hypoxia, the State is moving for execution dates after they have completed their appeals.

Woods's complaint alleges violations of his rights under the Eighth and Fourteenth Amendments and under state law. Woods alleges that the State violated his right to procedural due process by failing to tell him during the election period that it did not have a nitrogen-hypoxia protocol and by failing to help him access his attorney during the election period. *See* U.S. Const. amend. XIV. He also alleges that the State violated his right to equal protection of law by moving for his execution before the execution of similarly situated inmates and by helping the

5

plaintiffs in *In re: Alabama Lethal Injection Protocol Litigation* access their attorneys but not doing the same for him. *See id.* Woods contends that "targeting [him] for speedier execution, and thereby discriminating against [him], based solely on method of execution is arbitrary and wanton conduct," and that Alabama's lethal-injection protocol violates his right to be free from cruel and unusual punishment. *See* U.S. Const. amend. VIII. He also asserts state-law claims of fraudulent misrepresentation and fraudulent suppression because the State told him that the election form would determine the *method* of his execution but did not tell him that it would affect the *timing* of his execution. His final claim is that the State violated the Alabama Administrative Procedure Act by failing to comply with the Act when it purportedly created a rule that "targets" for execution those inmates who did not elect nitrogen hypoxia.

The State filed a motion to dismiss and, in the alternative, a motion for summary judgment. Woods opposed that motion, cross-moved for summary judgment, and filed a motion for a stay of execution. The district court held a hearing, and on March 2, it ruled in favor of the State on Woods's federal claims, declined to exercise supplemental jurisdiction of his state-law claims, and denied his motion for a stay of execution. Woods appealed that ruling and filed an emergency motion for a stay of execution in this Court and a motion for excess

words. We grant Woods's motion for excess words and deny his motion for a stay of execution.

## II. DISCUSSION

We may grant Woods's motion for a stay of execution "only if [he] establishes that (1) he has a substantial likelihood of success on the merits; (2) he will suffer irreparable injury unless the injunction issues; (3) the stay would not substantially harm the other litigant; *and* (4) if issued, the injunction would not be adverse to the public interest." *Price v. Comm'r, Ala. Dep't of Corr.*, 920 F.3d 1317, 1323 (11th Cir. 2019) (internal quotation marks omitted). A stay of execution is an equitable remedy that "is not available as a matter of right." *Hill v. McDonough*, 547 U.S. 573, 584 (2006).

Woods is not entitled to a stay of execution for at least two reasons. Equity weighs heavily against granting the motion because of its untimeliness and the State and the victims' interest in enforcement of criminal sentences. And Woods has failed to establish a substantial likelihood of success on the merits of any of his claims.

### A.  *Equity Weighs Against Granting Woods's Motion for a Stay.*

Woods has not established his entitlement to the equitable remedy of a stay of execution. Equity strongly disfavors inexcusable delay. "The Supreme Court has unanimously instructed the lower federal courts on multiple occasions that we must

7

apply 'a strong equitable presumption against the grant of a stay where a claim could have been brought at such time as to allow consideration of the merits without requiring entry of a stay.'" *Jones v. Comm'r, Ga. Dep't of Corr.*, 811 F.3d 1288, 1297 (11th Cir. 2016) (quoting *Hill*, 547 U.S. at 584); *see also Gomez v. U.S. Dist. Ct. for N. Dist. of Calif.*, 503 U.S. 653, 654 (1992). "Last-minute stays should be the extreme exception, not the norm, and the last-minute nature of an application that could have been brought earlier, or an applicant's attempt at manipulation, may be grounds for denial of a stay." *Bucklew v. Precythe*, 139 S. Ct. 1112, 1134 (2019) (internal quotation marks omitted). Woods's execution was scheduled on January 30, 2020, for March 5, yet he waited until February 24—10 days before the execution—to move the district court for a stay of execution. **[*Id.*]** We agree with the district court's well-reasoned ruling that the last-minute nature of his motion for a stay is unjustified.

Equity also weighs against granting the stay because "the State and the victims of crime have an important interest in the timely enforcement of a sentence." *Hill*, 547 U.S. at 584. As the State explains, Woods was convicted and sentenced to death in 2005 "for his part in the brutal slaying of three police officers in the line of duty and the attempted murder of a fourth." After Woods completed the conventional appellate process, the State did not face an impediment to executing him. Woods contends that the State cannot rely on its interest in the

8

timely enforcement of a sentence because it offered him the option of execution by nitrogen hypoxia—which would have indefinitely delayed his execution. That the State has chosen to offer an alternative method of execution and to honor the wishes of inmates who make that selection does not eliminate its interest in carrying out the sentences of inmates who did not elect that method. Woods also argues that a stay would not be adverse to the public interest because of the purported strength of his claims, but, as we discuss below, we disagree.

### B.  Woods Failed to Establish a Substantial Likelihood of Success on the Merits of His Claims.

Woods also has failed to establish a substantial likelihood of success on the merits of any of his claims. That failure is a separate reason we must deny his motion. We address each claim in turn.

### 1.  Procedural Due Process.

Woods alleges that the State violated his right to procedural due process because it failed to tell him that electing nitrogen hypoxia would affect the timing of his execution and it did not help him access his attorney during the election period. *See* U.S. Const. amend. XIV. To succeed on this claim, Woods must show "(1) a deprivation of a constitutionally-protected liberty or property interest; (2) state action; and (3) constitutionally inadequate process." *Worthy v. City of Phenix City*, 930 F.3d 1206, 1223 (11th Cir. 2019) (internal quotation marks omitted). Woods has failed to make a substantial showing that the procedures he wanted

9

were constitutionally required.

The Supreme Court's decision *Ohio Adult Parole Authority v. Woodard*, 523 U.S. 272, 277 (1998), is instructive. In *Woodard*, a death-sentenced inmate challenged the State's clemency process as violating his right to due process. *Id.* at 266–67. Justice O'Connor, in the controlling concurring opinion, held that "some *minimal* procedural safeguards apply to clemency proceedings," such that a State may provide constitutionally inadequate process if it based its clemency decisions on a coin flip or "arbitrarily denied a prisoner any access to its clemency process." *Id.* at 289 (O'Connor, J., concurring in part and concurring in the judgment); *see also Gissendaner v. Comm'r, Ga. Dep't of Corr.*, 794 F.3d 1327, 1331 (11th Cir. 2015) (explaining that Justice O'Connor's opinion set the binding precedent). She concluded that the State had provided adequate process in the clemency proceeding even though it provided Woodard only a few days' notice of the hearing, excluded his counsel from his clemency interview, allowed his attorney "to participate in the hearing only at the discretion of the parole board chair," and did not allow Woodard to testify or submit documentary evidence at the hearing. *Woodard*, 523 U.S. at 289–90. That he had received "notice of the hearing and an opportunity to participate in an interview, comport[ed] with [the State's] regulations and observe[d] whatever limitations the Due Process Clause may impose on clemency proceedings." *Id.* at 290.

10

Our decision in *Price* is also instructive. 920 F.3d at 1322. Price was another death-sentenced inmate in Alabama who did not elect nitrogen hypoxia. *Id.* His complaint alleged that the State violated the Equal Protection Clause by not allowing him to elect nitrogen hypoxia after the thirty-day opt-in period had ended. *Id.* In support of that claim, he contended that the State had not adequately explained his rights and that most of the inmates who elected nitrogen hypoxia received advice from their counsel at the Federal Public Defender's Office. *Id.* at 1324. In rejecting that argument, we stressed that Price was represented by counsel during the election period and could have sought advice from his attorney. *Id.* Although that holding addressed the Equal Protection Clause, the district court aptly concluded that its reasoning is instructive in resolving Woods's due process challenge.

The election procedure that Woods challenges determined his method of execution, not whether he would be spared from execution, such as in clemency. *See Woodard*, 523 U.S. at 280–81. And Woods does not dispute that he received the election form during the election period, thus informing him of the option to elect nitrogen hypoxia, and that he was represented by counsel at that time. He has failed to establish that he has a substantial likelihood of succeeding on his claim that the process the State provided him for electing nitrogen hypoxia was constitutionally inadequate.

2.  Equal Protection Clause.

Woods alleges that the defendants violated his Fourteenth Amendment right to equal protection of the law. *See* U.S. Const amend. XIV. To succeed on this claim, Woods must establish that "the State will treat him disparately from other similarly situated persons." *Arthur v. Thomas*, 674 F.3d 1257, 1262 (11th Cir. 2012) (internal quotation marks omitted).

Woods contends that the State treated him disparately from two groups of purportedly similarly situated persons. The first group is inmates who also have completed their conventional appeals but do not have scheduled execution dates because they elected nitrogen hypoxia. The second group is inmates who were plaintiffs in the *In re: Alabama Lethal Injection Protocol Litigation* and purportedly received State-sponsored help in meeting with their counsel who worked at the Federal Public Defender's Office.

As the district court correctly concluded, our decision in *Price* controls this issue. To establish his equal-protection claim, Price similarly pointed to the inmates who elected nitrogen hypoxia and those whom the Federal Public Defender's Office represented and provided with election forms and an explanation of their rights. *Id.* at 1324. Beginning with the first group, we concluded that Price was not similarly situated to the inmates who elected nitrogen hypoxia during the election period—they opted in during the election period and

12

he did not. *Id.* at 1325. The same is true of Woods. As to the second group, we explained that "the interactions between other inmates and the Federal Public Defender's Office do not support any unequal treatment by *the State* of similarly situated individuals." *Id.* at 1324. Price was represented by counsel too and could have sought assistance in making the decision but did not. *Id.* Woods has similarly failed to establish that any difference in treatment between him and the inmates the Federal Public Defenders represented could be attributed to the State. As the district court explained, Woods failed to introduce evidence to support his contention that the State helped these inmates meet with their attorneys. And Woods could have contacted his attorney for advice. Woods has failed to establish a substantial likelihood of success on this claim.

### 3. Eighth Amendment.

Woods argues in his emergency motion for a stay that he "is likely to succeed in showing the State has violated his Eighth Amendment rights by targeting him for speedier execution" based on his refusal to select nitrogen hypoxia. *See Caldwell v. Mississippi*, 472 U.S. 320, 343 (1985) (O'Connor, J., concurring in part and concurring in the judgment). But he has failed to establish a substantial likelihood of success on this claim, as the district court ably explained in rejecting this claim. The district court correctly rejected Woods's attempt to equate his situation—the *carrying out* of his death sentence—with the *imposition*

13

of a death sentence. And it also correctly determined that Woods failed to establish

that the State acted arbitrarily in moving to execute him before inmates who

elected nitrogen hypoxia, a method of execution that is not presently available.

### 4. State-Law Claims.

Woods argues that he has established a substantial likelihood of succeeding

on the merits of his state-law claims. To succeed on his state-law claims, he would

need to establish that the district court abused its discretion when it declined to

exercise supplemental jurisdiction over those claims. But the decision whether to

exercise supplemental jurisdiction over Woods's state-law claims rested within the

district court's sound discretion. *Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1088–

89 (11th Cir. 2004). When, as here, a district court dismisses a plaintiff's federal

claims, we have encouraged dismissal of the remaining state-law claims too. *Id.* at

1089. So the district court did not abuse its discretion. For that reason, Woods has

failed to establish a substantial likelihood of success on these claims.

### III. CONCLUSION

We **GRANT** Woods's motion for excess words and **DENY** his motion for a

stay of execution.

14

ROSENBAUM, Circuit Judge, concurring in the judgment:

I concur in the judgment of the Court denying Nathaniel Woods's motion to stay execution. We have explained that the "most important question" in addressing a motion for stay concerns whether the movant has shown a substantial likelihood of success on the merits of the claims he brings. *Jones v. Comm'r, Ga. Dep't of Corr.*, 811 F.3d 1288, 1292 (11th Cir. 2016). I agree with the panel that Woods cannot establish a substantial likelihood of success on the merits of his claims. I write separately because Woods bears the burden of establishing all four prongs of the stay test and he cannot establish the most important one—a substantial likelihood of success on the merits. For that reason, I would start and end the analysis with the discussion of the Woods's failure to demonstrate a substantial likelihood of success on the merits. I would not opine on any other prongs of the stay test, since it makes no difference to the outcome here.

15