[PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 24-11689

_____

JAMIE MILLS,

Plaintiff-Appellant,

*versus*

JOHN Q. HAMM,
Commissioner of the Alabama Department of
Corrections sued in his official capacity,
TERRY RAYBON,
Warden of the Holman Correctional Facility
sued in his official capacity,
KAY IVEY,
Governor of the State of Alabama sued
in her official capacity,
STEVEN MARSHALL,
Attorney General for the State of
Alabama sued in his official capacity,

2                          Order of the Court                    24-11689

                                                        Defendants-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Alabama
D.C. Docket No. 2:24-cv-00253-ECM

_____

Before WILLIAM PRYOR, Chief Judge, and LUCK and ABUDU, Circuit
Judges.

WILLIAM PRYOR, Chief Judge:

Jamie Mills, an Alabama inmate scheduled to be executed on
May 30, 2024, for committing two murders in 2004, moves for a
stay of execution pending this appeal. Mills appeals the denial of
his motion for a preliminary injunction based on his complaint that
the State's practice of restraining its condemned prisoners on a gur-
ney before execution will violate his constitutional rights to access
the courts, to counsel, to due process, and against cruel and unu-
sual punishment. *See* U.S. CONST. amends. I, V, VI, VIII, XIV; 42
U.S.C. § 1983. Because Mills has not established that he is substan-
tially likely to succeed on the merits of his appeal or that the equi-
ties favor a stay of execution at this late stage, we deny his motion.

## I. BACKGROUND

Jamie Mills was sentenced to death in 2007 for the murders of
Floyd and Vera Hill, an elderly couple whom he bludgeoned to

24-11689                Order of the Court                3

death with a "machete, tire tool, and ball-peen hammer." The Alabama Court of Criminal Appeals and the Supreme Court of Alabama affirmed, *Mills v. State*, 62 So. 3d 553, 574 (Ala. Crim. App. 2008); *Ex parte Mills*, 62 So. 3d 574, 601 (Ala. 2010), and the Supreme Court of the United States denied certiorari, *Mills v. Alabama*, 133 S. Ct. 56 (2012) (mem.). Mills also sought, and the trial court denied, postconviction relief under Alabama Rule of Criminal Procedure 32. The Alabama Court of Criminal Appeals and Supreme Court of Alabama affirmed. Mills then filed a federal petition for a writ of habeas corpus, which the district court denied in 2020. This Court denied a certificate of appealability in 2021, and the Supreme Court denied certiorari in 2022.

On March 27, 2024, the Supreme Court of Alabama issued a warrant for Mills's execution for May 30 and May 31, 2024. Mills then launched a flurry of filings in federal courts. On April 5, 2024, he moved the district court that had denied his habeas petition for relief under Federal Rule of Civil Procedure 60 and for a stay of execution. The district court denied relief, denied a stay, and denied a request for a certificate of appealability. In that action, Mills applied to this Court for a certificate of appealability and for a stay of execution, both of which we denied.

On April 26, 2024, a month after his execution date was set, Mills filed this action against the Commissioner and other State officials. Mills alleged that the State would strap him to the gurney in the execution chamber for an undue length without access to counsel in violation of his rights to access the courts, to counsel, to due

process, and against cruel and unusual punishment. He sought declaratory and injunctive relief. When, by May 1, 2024, Mills had not moved for injunctive relief or expedited discovery, the district court, "for good cause," ordered him to file any motions no later than May 3, 2024. Mills moved for a preliminary injunction on May 3, and the district court held a hearing on the motion on May 14.

On May 21, 2024, the district court denied the motion for a preliminary injunction. It ruled that Mills had not established that he was substantially likely to succeed on the merits or that the equities weighed in favor of granting a preliminary injunction or stay of execution. Three days later—on May 24, 2024—Mills appealed that ruling. He asks this Court to reverse and remand with instructions to enter a preliminary injunction or for a stay of execution if his case remains pending. The parties have briefed the issues. We take up Mills's request for a stay pending appeal.

## II. STANDARD OF REVIEW

We review the denial of a preliminary injunction for abuse of discretion. *See Powell v. Thomas*, 641 F.3d 1255, 1257 (11th Cir. 2011). Under that deferential standard, the district court may reach a "range" of permissible conclusions. *United States v. Frazier*, 387 F.3d 1244, 1259 (11th Cir. 2004) (en banc). We review legal conclusions *de novo* and factual findings for clear error. *See Jones v. Governor of Fla.*, 950 F.3d 795, 806 (11th Cir. 2020). We must accept the findings of fact if they are "plausible," even if we would weigh the evidence differently. *Thai Meditation Ass'n of Ala., Inc. v. City of Mobile*, 980

24-11689                    Order of the Court                    5

F.3d 821, 835 (11th Cir. 2020) (citation and internal quotation marks omitted).

## III. DISCUSSION

A court may grant a stay of execution only if the movant establishes that he is substantially likely to succeed on the merits, he will suffer irreparable injury absent the stay, and the stay would not substantially harm the opposing party or the public interest. *Brooks v. Warden*, 810 F.3d 812, 818 (11th Cir. 2016). Mills argues that the district court abused its discretion in ruling that he failed to establish that he is substantially likely to succeed on the merits or that the equities favor a stay. We reject each argument in turn.

*A. Mills Is Not Likely to Succeed on the Merits.*

Mills argues that he is likely to succeed on the merits of his claims under the Sixth, Eighth, and Fourteenth Amendments. We disagree.

Mills is unlikely to succeed on the merits of his claim under the Sixth Amendment, which guarantees the right to assistance of counsel in all "criminal prosecutions." U.S. CONST. amend. VI. The right attaches to "all critical stages" of "criminal proceedings." *Missouri v. Frye*, 566 U.S. 134, 140 (2012) (citation and internal quotation marks omitted). Critical stages are "trial-like confrontations" between the State and the accused. *Rothgery v. Gillespie County*, 554 U.S. 191, 212 n.16 (2008) (citation and internal quotation marks omitted). The right to counsel does not extend beyond the first appeal, and Mills is far past that stage. *See Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987). Mills is no longer a party to a proceeding to

which the Sixth Amendment extends the right to counsel. Our sister circuit has reached the same conclusion. *See Whitaker v. Collier*, 862 F.3d 490, 501 (5th Cir. 2017) (holding that a claim to the right to counsel "during . . . execution" is "without merit" because the Sixth Amendment right to counsel extends only to the first appeal of right (internal quotation marks omitted)).

Mills is also unlikely to succeed on the merits of his claim under the Eighth Amendment, which prohibits the "inflict[ion]" of "cruel and unusual punishments," U.S. CONST. amend. VIII, and forbids the "unnecessary and wanton infliction of pain," *Hope v. Pelzer*, 536 U.S. 730, 737 (2002) (citation and internal quotation marks omitted). Infliction of pain is unnecessary and wanton only if it "totally" lacks penological justification. *Id.* (citation and internal quotation marks omitted). The Amendment does not mandate the "avoidance of all risk of pain in carrying out executions," *Baze v. Rees*, 553 U.S. 35, 47 (2008) (plurality), and painful conduct that "does not purport to be punishment at all" must involve more than "ordinary lack of due care for the prisoner's interests," *Whitley v. Albers*, 475 U.S. 312, 319 (1986). Mills is unlikely to establish that the district court exceeded the "range" of permissible conclusions, *see Frazier*, 387 F.3d at 1259, in ruling that his execution is not substantially likely to involve "unnecessary, wanton, or torturous" pain.

Mills's claim rests on unsupported premises. For one thing, the State does not unconstitutionally punish an inmate merely by placing him on a gurney in preparation for execution. For another, the district court credited the plausible testimony of the Commissioner

that the State would not restrain Mills on the gurney while a stay is in effect and that the State would remove Mills from the gurney if a stay were later issued. As the district court found, "legitimate penological reasons" explain why several inmates have recently been strapped to the gurney for longer durations, including the difficulty of gaining intravenous access and delays in transporting witnesses to the chamber. In any event, those delays have dwindled: for the most recent execution, the inmate spent less than an hour on the gurney, in part, the district court found, on account of improvements the State has made to decrease delays. Mills denounces these findings as "unreasonable," but they are more than "plausible," *see City of Mobile*, 980 F.3d at 835 (citation and internal quotation marks omitted).

Mills is also unlikely to succeed on the merits of his due-process claim for access to counsel while in the execution chamber. Mills has no constitutionally protected interest in having counsel present throughout his execution. He argues that he has a right to counsel because violations of his rights in the execution chamber would be "unreviewable" otherwise. But that argument is mistaken because, as the Commissioner points out, a lawsuit, like this one, offers Mills the opportunity to review the constitutionality of the expected procedures in the execution chamber. And Mills's argument proves too much because, if sound, it would entail that prisoners *always* have a due-process right to the presence of counsel for the purpose of policing and litigating potential violations.

8                        Order of the Court                    24-11689

Last, Mills is unlikely to succeed on the merits of his claim for access to courts. This claim must be pleaded as "ancillary" to a "substantive underlying claim." *Chappell v. Rich*, 340 F.3d 1279, 1283 (11th Cir. 2003). It "vindicat[es]" a "separate and distinct right" to seek judicial relief. *Barbour v. Haley*, 471 F.3d 1222, 1226 (11th Cir. 2006). Because Mills is not substantially likely to succeed on the merits of his other claims, he is not substantially likely to succeed on the merits of this one.

### B. The Equities Do Not Favor a Stay.

Mills argues on two grounds that the district court clearly erred in finding that his delay in seeking a preliminary injunction and a stay was "unnecessary and inexcusable." *See Brooks*, 810 F.3d at 824 (reviewing for clear error a finding of inexcusable delay). First, he argues that the district court "misapplied the equities analysis" in assessing whether to grant injunctive relief. The district court assessed whether Mills was entitled to a stay, but Mills insists that he "does not need a stay of execution in this case." Second, he argues that he lacked a cause of action and standing to bring this action any sooner than he did.

A party's "inequitable conduct" can foreclose equitable relief like a stay. *Ramirez v. Collier*, 142 S. Ct. 1264, 1282 (2022). Equity "strongly disfavors inexcusable delay." *Woods v. Comm'r, Ala. Dep't of Corr.*, 951 F.3d 1288, 1293 (11th Cir. 2020). So "last-minute claims" that arise from "long-known facts" counsel the denial of "equitable relief in capital cases," *Ramirez*, 142 S. Ct. at 1282, and "[l]ast-minute stays" of execution should be "the extreme

24-11689                    Order of the Court                    9

exception," *Bucklew v. Precythe*, 139 S. Ct. 1112, 1134 (2019). If a prisoner who seeks a stay of execution could have sued early enough "to allow consideration of the merits" *without* "requiring the entry of a stay," equity disfavors the stay. *See Jones v. Allen*, 485 F.3d 635, 641 (11th Cir. 2007) (citation and internal quotation marks omitted).

Mills protests that the district court should not have considered whether a *stay* was warranted. But Mills himself argues, on appeal, that he *is* "entitled to" a stay, and he *asked* the district court for a stay if injunctive relief were denied—as it was. The district court correctly recognized that the same analysis governs both whether to grant a preliminary injunction and whether to grant a stay. *Compare, e.g.*, *Brooks*, 810 F.3d at 818 (stay), *with Honeyfund.com Inc. v. Governor*, 94 F.4th 1272, 1277 (11th Cir. 2024) (preliminary injunction). That Mills insists that he does not *"need"* a stay of execution is irrelevant. He sought one, in the alternative, and the district court correctly applied the "equities analysis" for that request.

The district court also reasonably found that Mills could have sought a stay in January 2024, when the State moved to set his execution date, or on March 27, 2024, when the State set his execution schedule. Mills instead waited a month, until April 26, to file this action—and then waited another week, until May 3, to seek injunctive relief or a stay. He might have waited longer had the district court not ordered him to file any motions by that deadline. Mills's assertion that he brought this action when "it first became apparent to him" that the night of his execution might be "long" on account

of what the district court called his "flurry" of legal filings snaps credulity. It is no surprise, as the Commissioner notes, that execution days are "*often* long," on account of "last-minute appeals"—like Mills's, which was lodged less than a week before his execution, on the cusp of a three-day-holiday weekend. A reasonably diligent plaintiff would have sought a stay much sooner, and the district court did not clearly err in finding that Mills's "inequitable conduct," *see Ramirez*, 142 S. Ct. at 1282, weighed against a stay.

Last, we reject Mills's argument that the district court abused its discretion in ruling that other equities weigh against a stay. Here, the State's interest and harm "merge with"—they *are*—"the public interest." *See Swain v. Junior*, 958 F.3d 1081, 1091 (11th Cir. 2020). The State has "an important interest in the timely enforcement" of Mills's sentence, *see Woods*, 952 F.3d at 1293 (citation and internal quotation marks omitted); Mills murdered his elderly victims nearly 20 years ago and has been sentenced to death since 2007. Further "interference" with the State's "strong interest" in enforcing its criminal judgments would be "undue." *Bowles v. DeSantis*, 934 F.3d 1230, 1247 (11th Cir. 2019) (citation and internal quotation marks omitted). And the public's interest in seeing its "moral judgment," embodied in Mills's sentence, carried out promptly is the State's interest too. *See Calderon v. Thompson*, 523 U.S. 538, 556 (1998).

## IV. CONCLUSION

We **DENY** Mills's motion for a stay of execution.

24-11689                Abudu, J., Concurring                1

ABUDU, Circuit Judge, Concurring:

While I concur in the denial of Mills' motion to stay his execution based on Circuit precedent, I write separately to ensure Mills' concerns regarding Alabama's execution process are appropriately acknowledged. Mills points to the botched executions of four inmates from Alabama's death row—Joe James, Alan Miller, James Barber, and Kenneth Smith.

In James' case, he was placed on the execution gurney two hours before IV access was established to begin the lethal injection procedure. An independent autopsy determined that James suffered multiple puncture wounds, bruising, and cuts prior to the execution, and he was unable to give his last statement due to being unconscious when the curtain opened.

Miller also laid on the execution gurney for almost two hours before officials attempted to put in the lethal injection IV. Then, after the IV was inserted and the injection ready to be administered, officials called off the execution. Miller remained strapped to the IV for an additional 28 minutes before the IV was removed. During this over two-hour affair, Miller alleged that his gurney was tilted vertically, resulting in him hanging from the gurney's straps.

Smith went through Alabama's execution procedure twice. In the first instance, officials had Smith strapped to the execution gurney despite the existence of a stay of execution. For two hours, Smith awaited his execution without knowing a stay had been issued. Then, once the stay was vacated, officials attempted to

2                    Abudu, J., Concurring                    24-11689

establish IV access to no avail. In the second instance, Smith was executed via nitrogen hypoxia. Witnesses expressed dismay at the effects nitrogen hypoxia had on Smith during the execution.

Finally, at Barber's execution, he was placed on the execution gurney—with the IV in place—for over an hour to allow for execution witnesses to be transported to the viewing area.

While precedent does not establish that these conditions are unconstitutional *per se*, Alabama's pattern of delay during executions is troubling. Mills has a valid fear that he will be unnecessarily placed on the execution gurney if a stay is in place, while the IV team is not attempting to establish IV access, or while officials transport witnesses to the viewing area, without being given any updates from officials on the status of his cases or the ongoing execution protocol.

In its filings to this Court, the State has assured us that should Mills be granted a stay while he is on the execution gurney, he will be returned to a holding cell. The State also indicated it has taken steps to accelerate its preparation process to ensure witnesses are transported to the viewing area sooner to limit delays.

Although those on death row are considered the most detested members of society, our humanity remains dependent on carrying out the most severe penalty in the least barbaric way.